**Clifford Oran CRAIG, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–85–073–CR.**

Court of Appeals of Texas, Fort Worth.

Feb. 26, 1986.

Discretionary Review Refused April 30, 1986.

Ross Gault, White Settlement, for appellant.

Tim Curry, Dist. Atty. and Delonia A. Watson, Asst. Fort Worth, for state.

Before FENDER, C.J., and HOPKINS and HUGHES, Jr., J. (Retired).

## OPINION

HUGHES, Jr., Justice (Retired).

Clifford Oran Craig has appealed the judgment of conviction rendered against him as a result of the jury finding him guilty of the offense of aggravated sexual assault of a child. *See* TEX. PENAL CODE ANN. sec. 22.021 (Vernon Supp. 1986). He was assessed a penalty of confinement in the Texas Department of Corrections for a life term.

We affirm.

The evidence shows that a man identified as the appellant took a two-year-old girl out of the backyard of her home to a nearby alley where he was found on top of her. A doctor testified that the girl's vagina had been penetrated by some object but he could not say with medical certainty that it was a penis.

Craig was indicted for having committed aggravated sexual assault upon a child. Such indictment charged that he intentionally and knowingly caused the penetration of the vagina of the child "by insertion of the defendant's penis into the complainant's vagina" and "by inserting an object unknown to the grand jury into her vagina."

Appellant filed his notice of insanity defense on January 23, 1985. After a competency hearing on January 28, 1985, a jury found appellant competent to stand trial.

At appellant's competency hearing two doctors testified appellant is mildly retarded. There was also testimony from Dr. Holbrook, the medical director of the Tarrant County jail, that from January 23, 1985 on appellant had been taking Mellaril, a "major tranquilizer" for his agitated behavior. Appellant continued taking this drug throughout the hearing and trial.

At trial on the merits, the State introduced several photographs into evidence. One of these, Exhibit #5, is a picture of the alley where the incident took place. There are two people in the picture. They were not present at the time of the crime. In addition, a color picture of the victim's bloody genital area, spread open by adult hands was admitted over appellant's objection that the picture was inflammatory and prejudicial.

■ Ground of error one asserts error by the trial court in trying Craig while he was being sedated by the drug Mellaril. The thrust of this complaint is that Craig had the right to appear at his trial "in his true emotional condition rather than a subdued, drug induced state meant to simulate competence."

This ground is apparently one of first impression in this state. Craig relies principally on a Washington case for his authority. *See State v. Maryott,* 6 Wash. App. 96, 492 P.2d 239 (1971). In that case the court reasoned: "The demeanor in court of one who has raised the issue of his

sanity is of probative value to the trier of fact ... [the defendant] claimed to be highly excitable because of his mental condition; yet, the jury saw him as very quiet because he was drugged." *Id.* at 242. In the instant case, Craig was prescribed a major tranquilizer by the jail physician at the order of the judge and he was maintained on the same drug throughout both his sanity hearing and the trial of his felony case. Craig, again citing *Maryott, cf. id.* at 241, claims that he was denied "his due process right to appear at his own trial free of the unnecessary mental shackles placed on him by the State."

The jail physician, Dr. Holbrook, testified that he was called in by the judge because of Craig's agitation. In other words, Craig asserts that, in light of his injection of his sanity into the case, he was entitled "to let it all hang out." He claims that he had the right to have the jury see him in his true condition of agitation, "unshackled" by the Mellaril which sedated him into appearing as a normal human being.

A careful reading of the *Maryott* case, as well as of *State v. Murphy*, 56 Wash.2d 761, 355 P.2d 323 (1960), upon which Craig also relies, indicates some important differences from the present case.

In the *Murphy* case there was testimony that the defendant was nervous, apprehensive and had a mental illness denominated as a "character neurosis," but, on the day of his trial, he was relaxed, "casual, cool, not at all perturbed and showed a lackadaisical attitude." *See Murphy,* 355 P.2d at 324, 326. After hearing testimony about defendant's "lackadaisical attitude," the Washington Supreme Court concluded defendant's demeanor might have caused him to receive the death penalty. *See id.* at 327. Testimony reflected that he was under the influence of two tranquilizers given to him by a trusty for his severe cold. *See id.* at 325–26. No one but the trusty or the defendant knew of this having been done. *See id.* In *Murphy* the jury did not know of the medication and could not have taken it into its consideration. *See id.* at 326.

In the present case, the jury had the benefit of medical testimony on the Mellaril

and how it helped Craig with his thought processes. There was no testimony as to whether or not his appearance before the jury was better, worse or the same because of the drug.

In *Maryott* the defendant was dosed with substantial amounts of Sparine, Librium and chloral hydrate by his jailers. *See Maryott,* 492 P.2d at 240. There was no showing that such medication was *ordered by the court. See id.* (Emphasis ours). "His counsel repeatedly requested to have him taken off the drugs," and defendant, at one time, requested to be taken off drugs so the jury could see "how excitable he could get in an undrugged condition." *Id.* There was testimony that the defendant, Maryott, in his drugged condition, sat "hunched over, staring vacantly ahead." His lawyer testified to his being suspicious and uncommunicative and refusing to assist in his defense. *Id.* He was also described in testimony as being "dull and listless during the trial" and that he "did not act like himself." *Id.*

By contrast in this instant case, there were no claims that sedatives prescribed were such that Craig was not able to aid his counsel in preparation or trial of the case. Indeed, one of the psychiatrists testified that Craig was better able to organize his thinking and articulate his thought processes because of such dosage. Certainly, there was no request by the defense to discontinue the medication or delay the trial so that the effects of the Mellaril could be allowed to wear off. It was not demonstrated how Craig's "subdued, drug induced state" differed from his normal condition to the extent that he was prejudiced. In the instant case (unlike *Murphy* ) the jury knew that Craig was medicated and they were in a position to take such into consideration. *See Murphy,* 355 P.2d at 326.

In this case, as in physical restraint cases, we conclude that each case has to "stand on its own bottom," so to speak, to determine if drug restraints are justified and not an abuse of the trial judge's discretion. *See also Gammage v. State,* 630 S.W.2d 309, 314–15 (Tex.App.—San Anto-

nio 1982, pet. ref'd). We hold that the trial judge did not abuse his discretion and we overrule the first ground of error.

■ The second ground of error complains of the trial court's allowing the foreman of the grand jury to testify. Craig bases this ground on TEX. CODE CRIM. PROC.ANN. art. 19.34 (Vernon 1977) which provides that grand jurors must take an oath to keep their proceedings secret "unless required to disclose the same in the course of a judicial proceeding in which the truth or falsity of evidence given in the grand jury room, in a criminal case, shall be under investigation." *Id.*

In this case the victim was only two years of age. How could she testify as to what was done to her or what was used to penetrate her vagina? The examining doctor could not, with medical certainty, identify the penetrating object. The State, therefore, alleged alternatively, the "object unknown." It having been alleged in the indictment, it was necessary for the State to make proof of what the grand jury had before it in this regard. *See McIver v. State*, 555 S.W.2d 755, 756 (Tex.Crim.App. 1977); *Jones v. State*, 132 Tex.Crim. 216, 104 S.W.2d 42, 43 (1937).

In any event, there were no objections made to the foreman's testimony at the trial and if there was an error, it was waived. *See Green v. State*, 682 S.W.2d 271, 275 (Tex.Crim.App.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1407, 84 L.Ed.2d 794 (1985). We overrule the second ground of error.

■ The third ground of error asserts error in the admission of a photograph of the scene of the crime because there were two people in the picture who were not there at the time of the incident in question. It is urged that this made the exhibit non-representative and inadmissible. At trial, defense counsel's objection was: "no objection except to the two people that are in the exhibit." We do not find harm in the picture depicting two people in addition to the scene of the crime. It was offered and admitted into evidence with the jury knowing of the variance. The judge did not abuse discretion in admitting it. *See Fobbs v. State*, 468 S.W.2d 392, 392 (Tex.Crim. App.1971). Craig's guilt was amply proved without the picture and it could not have prejudiced the jury. *See Yarbrough v. State*, 617 S.W.2d 221, 225 (Tex.Crim.App. 1981). We overrule the third ground of error.

By his fourth ground of error Craig charges that the admission of the picture of the victim's bloody vaginal area being spread by adult fingers was an abuse of the trial judge's discretion.

The question is: Was the picture sufficiently probative to justify its admission into evidence? The examining doctor used the picture to show the jury the location and extent of the victim's injuries. The picture *was* inflammatory and prejudicial; but, did it serve to enlighten the jury? The trial judge had the discretion and the duty and the right to make that decision. It will be disturbed only if abuse of such discretion is shown. *See Terry v. State*, 491 S.W.2d 161, 163 (Tex.Crim.App.1973).

■ In making his decision, the trial judge is faced with deciding if the probative value of the photograph sufficiently outweighs the inflammatory nature of same. *Blansett v. State*, 556 S.W.2d 322, 328–29 (Tex.Crim.App.1977). "If a verbal description of the body and the scene of the crime would be admissible, a photograph depicting the same is admissible." *Burks v. State*, 583 S.W.2d 389, 392 (Tex.Crim. App.1979), *cert. denied*, 448 U.S. 907, 100 S.Ct. 3050, 65 L.Ed.2d 1136 (1980). The verbal description and the photograph coincide and one confirms and illustrates the other, regardless of inflammatory considerations. Certainly, the victim's picture in the instant case is no more gruesome than others which have been affirmed. *See Heckert v. State*, 612 S.W.2d 549, 551 (Tex. Crim.App.1981); *Burks*, 583 S.W.2d at 392; *Welch v. State*, 576 S.W.2d 638, 641 (Tex. Crim.App.1979). We overrule the fourth ground of error.

We affirm.