TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-03-00203-CR






Luis Acuna, Appellant


v.


The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT

NO. 9024193, HONORABLE JON N. WISSER, JUDGE PRESIDING




 

M E M O R A N D U M O P I N I O N



 A jury convicted appellant Luis Acuna of aggravated sexual assault. Acuna pleaded
true to three prior convictions for indecency with a child, and the trial court sentenced him to life in
prison. He appeals, complaining in three issues that he received ineffective assistance of counsel and
that the trial court erred in allowing certain testimony. We affirm the judgment of conviction.


Background


 Appellant does not dispute the sufficiency of the evidence, but for purposes of this
appeal, a very brief recitation of the facts may be helpful. The victim, a fifteen-year-old girl, was
attacked while jogging, dragged off the path at knife point, and sexually assaulted. She could not
see her attacker's face clearly because the man stayed behind her. After the attack, she called for
help, went home, and put her clothes into her laundry hamper. A few hours later she took them out
of the hamper, placed them in a bag, and gave the bag to her father. Her father locked the bag of
clothes in his car until he gave them to the police as evidence three days later. Semen found on the
victim's underwear matched appellant's DNA, which was already on file because appellant was
under investigation for two similar attacks in which L.M. and M.B. were pulled off jogging paths
and raped at knife point. At the time of this trial, appellant had recently been convicted and
sentenced to life imprisonment in the attack on L.M. and was awaiting trial for the attack on M.B.


Ineffective Assistance of Counsel


 In his first issue, appellant asserts that he received ineffective assistance of counsel. 
He attacks the following alleged deficiencies by his counsel: (i) counsel's questioning of a police
analyst, which resulted in testimony that appellant's DNA had been tested in an earlier case, thus
informing the jury of appellant's recent conviction for sexual assault and another pending charge for
sexual assault; (ii) counsel's failure to object to the admission of a piece of the victim's clothing
even though there was a missing link in the chain of custody; (iii) counsel's statement to the judge
that cumulating appellant's sentence was mandatory, when in fact it was discretionary; and (iv)
counsel's failure to put on mitigating evidence during the punishment phase of trial.

 To show ineffective assistance of counsel, a defendant must first show that counsel's
performance fell below an objective standard of reasonableness, and second, that the deficient
performance prejudiced the defendant's case. Strickland v. Washington, 466 U.S. 668, 687 (1984);
Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); Blevins v. State, 18 S.W.3d 266, 271
(Tex. App.--Austin 2000, no pet.). The defendant bears the burden of (1) overcoming a strong
presumption that counsel's performance fell within the range of reasonable professional assistance
and (2) bringing forth a record showing that counsel's performance was not based on sound trial
strategy. Blevins, 18 S.W.3d at 271. When the record is silent as to possible trial strategies, we will
not speculate as to why counsel acted in a particular way. See Jackson v. State, 877 S.W.2d 768, 771
(Tex. Crim. App. 1994); Mayhue v. State, 969 S.W.2d 503, 511 (Tex. App.--Austin 1998, no pet.). 
We evaluate trial counsel's effectiveness from his perspective at trial, not in hindsight, and we
consider the representation in its totality, rather than focusing solely on isolated acts or omissions. 
Mayhue, 969 S.W.2d at 510. In a case such as this one, when there is no evidentiary hearing on the
issue of effectiveness, the defendant's burden is difficult to meet, and rarely will we find counsel
ineffective. Blevins, 18 S.W.3d at 271-72 (quoting Thompson, 9 S.W.3d at 813); see Mayhue, 969
S.W.2d at 511.



 Testimony Regarding Other Assaults


 Appellant complains that his counsel was deficient in eliciting testimony about his
recent sexual assault conviction. Jane Burgett, a DNA analyst with the Department of Public Safety,
testified about the DNA evidence found on the victim's underwear and stated that it matched
appellant's DNA. Appellant's counsel asked Burgett about the DNA testing she performed in an
investigation into the assault on L.M., and the State then asked about M.B.'s assault. In closing
arguments, counsel argued that appellant's semen, taken from L.M. at about the same time Burgett
was testing this victim's underwear, might have contaminated the evidence in this case, hoping to
raise doubt in the jury's minds that appellant was the victim's attacker. (1) We will not second-guess
counsel's reasoning and trial strategy. See Jackson, 877 S.W.2d at 771; Mayhue, 969 S.W.2d at 511.



 Admission of the Victim's Clothing


 Appellant next complains that his counsel should have objected to the admission of
the victim's clothing, arguing that there was a gap in the chain of custody tag on the bag containing
her underwear.

 Several witnesses from the Austin Police Department and the Department of Public
Safety testified about the handling of the bag containing the victim's clothes. Detective Sharon Soliz
testified that she obtained the clothes from the victim's father, placed each item in its own evidence
bag, initialed and dated the chain of custody tags attached to each bag, placed the individual bags
into a larger sack, then sealed, initialed, and dated the larger sack. When the clothes were received
by the Department of Public Safety laboratory, the outer bag was sealed. The chain of custody tag
on the outside bag shows initials or signatures by Soliz, a technician who received and tracked the
evidence while it was out for testing, and an employee of the Department of Public Safety laboratory. 
Within the larger sack, all but one of the smaller sacks have a second set of initials; the smaller sack
lacking the second set of initials contained the victim's underwear, on which semen was found. 
Soliz testified that the second initials were by the evidence clerk, who witnessed Soliz put the
individual bags into the larger sack and seal the larger sack. The victim testified at trial that the
clothing presented, including the underwear, was what she was wearing when she was attacked. 
Before the clothing was admitted into evidence, appellant's counsel thoroughly questioned the
witnesses who handled the clothing to determine the operating procedures they had used and then
stated that he had no objection to the admission of the evidence.

 The State correctly points out that once an initial showing has been made that the
evidence is "what its proponent claims," see Tex. R. Evid. 901(a), and "[w]ithout evidence of
tampering, most questions concerning care and custody of a substance go to the weight attached, not
the admissibility, of the evidence." Lagrone v. State, 942 S.W.2d 602, 617 (Tex. Crim. App. 1997);
see Porter v. State, 969 S.W.2d 60, 66 (Tex. App.--Austin 1998, pet. ref'd) (if relevant
characteristics are distinguishable only by scientific analysis, State must prove beginning and end
of chain of custody; "any gaps in the interim go to the weight of the evidence, not admissibility" and
"[m]inor theoretical or speculative breaches in the chain, without affirmative evidence of
impropriety, do not affect the admissibility of the evidence"). The record shows that the evidence
was what its proponent claimed it was, the clothing the victim was wearing when she was attacked. 
Appellant's counsel asked numerous questions regarding the handling of the clothing and then
pointed to the missing initials in his closing argument in an attempt to undermine the weight of the
DNA evidence taken from the victim's clothing. Counsel may have known that once the initial
showing under rule 901 was made, any problems with the chain of custody would go to the weight
of the evidence but would not bar the evidence's admission, and his decision not to object to the
evidence's admission may have been a valid trial strategy. We will not second-guess counsel's
decision not to object to the evidence.



 Sentencing


 Appellant last argues that his counsel was deficient in the punishment stage of trial
because counsel stated, "I believe it's mandatory by the language," during a discussion about what
sentence should be assessed and whether it should run consecutively with another sentence. 
Appellant also complains of counsel's failure to present mitigating evidence that might have
persuaded the trial court to allow the sentences to run concurrently.

 Under the penal code, if a person is convicted of aggravated sexual assault after
having been convicted of indecency with a child, the person must be sentenced to life imprisonment. 
Tex. Pen. Code Ann. § 12.42(c)(2) (West Supp. 2004-05). If a person is convicted of an offense
after having already been convicted in another case and while the earlier sentence has not yet ceased
to operate, it is left to the trial court's discretion to decide whether the sentence imposed in the
second conviction should run concurrently with the first sentence or begin when the first sentence
has run. Tex. Code Crim. Proc. Ann. art. 42.08(a) (West Supp. 2004-05).

 During the punishment phase, appellant pled true to three prior convictions of
indecency with a child by exposure; aside from the State's offering proof of the prior convictions,
neither side put on any evidence. The trial court asked appellant's counsel, "The State is seeking a
sentence of life in prison to run consecutively to the prior sentence that your client has received. Did
you wish to present any argument as to what you think the Court can and should do?" Counsel
replied, "Well, Your Honor, I believe it's mandatory by the language. I have no argument." 
Appellant contends that this failure to argue against a consecutive sentence amounted to ineffective
assistance of counsel, arguing that "[t]elling the judge cumulation was mandatory was clearly
prejudicial." However, we do not read counsel's statement as agreeing that stacked sentences were
mandatory. Instead, he might have been agreeing that imposition of a life sentence was mandatory,
which is a correct statement of the law. See Tex. Pen. Code Ann. § 12.42(c)(2). Based on this
record, we cannot hold that counsel's remark was erroneous and amounted to ineffective assistance
of counsel.

 As for appellant's contention that his counsel was ineffective in failing to put on
mitigating evidence, the record does not show and appellant does not explain or even allude to any
possible mitigating evidence that counsel might have presented. See Narvaiz v. State, 840 S.W.2d
415, 434 (Tex. Crim. App. 1992) ("since appellant does not explain what mitigating evidence his
trial counsel should have proffered, we cannot possibly find that a failure to proffer such evidence
constituted ineffective assistance"); Thompson v. State, 915 S.W.2d 897, 905 (Tex. App.--Houston
[1st Dist.] 1996, pet. ref'd) ("Here, the record does not indicate that mitigating evidence existed. 
Therefore, we cannot determine if the failure to present such evidence constitutes ineffective
assistance."). Even if such evidence was available, counsel may have decided not to present that
evidence based on a valid trial strategy. See Burger v. Kemp, 483 U.S. 776, 794-95 (1987) (counsel
reasonably decided not to present mitigating evidence, determining that cross-examination could
reveal prejudicial matters); Ex parte Kunkle, 852 S.W.2d 499, 506 (Tex. Crim. App. 1993) (counsel
"made a tactical decision to neither present nor proffer this [mitigating] evidence at the punishment
stage," and court was "unable to conclude that such a deliberate decision, under the circumstances
. . . , rendered applicant's trial counsel unreasonable at the time of trial").

 Appellant has not shown that his counsel failed to investigate potential mitigating
evidence or that any such evidence existed. Nor has appellant shown that his case was prejudiced
by any failing on his counsel's part. See Thompson, 9 S.W.3d at 812. Based on this record,
appellant has not carried his burden of showing ineffective assistance of counsel. We overrule
appellant's first issue on appeal.


Testimony by the Victim's Father


 Appellant next contends that the trial court erred in allowing the victim's father to
testify after he was present in the courtroom while the victim testified. Appellant argues that this
alleged error was of constitutional dimension and deprived him of his right to have "witnesses testify
without the opportunity of corroboration" and thus, of his right to a fair trial.

 The victim testified that after she was attacked, she gave the clothing she was wearing
to her father. The victim's father was then called to the stand. He testified without objection that
a few hours after the attack his daughter took her clothes out of the laundry hamper, put them in a
bag, and gave them to him for safekeeping. He locked the bag of clothes in his car until he gave
them to Detective Soliz three days later. 

 Initially, we note that any objection to the father's testimony was waived by a failure
to object at trial. See Tex. R. App. P. 33.1(a). Further, although the rules of evidence provide that
upon request, a trial court should exclude witnesses from the courtroom so they cannot hear
testimony by other witnesses, see Tex. R. Evid. 614, the rule is somewhat different in criminal cases. 
In a criminal case, a witness who is a guardian of the victim should only be excluded if the trial court
determines that the witness's testimony "would be materially affected if the witness hears other
testimony." Tex. Code Crim. Proc. Ann. art. 36.03(a) (West Supp. 2004-05). The victim was the
first witness, followed immediately by her father. Having read their testimony, appellant has not
shown that even if an objection had been raised and an offer of proof made to justify the exclusion,
see id. art. 36.03(b), it would have been an abuse of discretion to allow the father to remain in the
courtroom while his daughter testified. See Carlile v. State, 451 S.W.2d 511, 512 (Tex. Crim. App.
1970). Nor does the record support appellant's claim that any such error was constitutional and
denied him a fair trial. See Barrera v. State, 982 S.W.2d 415, 416-17 (Tex. Crim. App. 1998)
(generally, failure to apply statute, even one arising from constitutional mandate, does not amount
to constitutional error; constitutional error is more than simple technical violation and directly
implicates constitutional rights). We overrule appellant's second issue on appeal.


Testimony by a Grand Juror


 Finally, appellant asserts error in the trial court's allowing testimony by a grand juror
who sat on the grand jury that indicted appellant, arguing that it violated the general rule that grand
jury proceedings are to be kept secret. See Stern v. State ex rel Ansel, 869 S.W.2d 614, 621-22 (Tex.
App.--Houston [14th Dist.] 1994, writ denied).

 The amended indictment in this case alleged that appellant used "a knife and a sharp
object to the Grand Jury unknown" during the attack. When an indictment alleges that an unknown
weapon was used but the evidence at trial identifies the weapon, the State must prove that the grand
jury used due diligence in determining the weapon used in the crime. Rosales v. State, 4 S.W.3d
228, 231 (Tex. Crim. App. 1999) (quoting Hicks v. State, 860 S.W.2d 419, 424 (Tex. Crim. App.
1993)); Matson v. State, 819 S.W.2d 839, 847 (Tex. Crim. App. 1991). The grand juror was called
to testify as a precaution against an attack on the indictment, and calling a grand juror to testify is
the usual method used to establish due diligence. See Matson, 819 S.W.2d at 847 n.5 (State has
burden of proof of whether object was unknown and whether grand jury utilized due diligence in
ascertaining its nature; "[u]sually this is done through the testimony of one of the grand jurors who
sat on the case"). Because of the allegation in the indictment and the proof presented at trial,
allowing the grand juror to testify was not error. See id.; see also Rosales, 4 S.W.3d at 231
(prosecution satisfied due diligence requirement "when it proved through one of the grand jurors that
the grand jury was unable to find out what object caused the various injuries"); Craig v. State, 704
S.W.2d 948, 951 (Tex. App.--Fort Worth 1986, pet. ref'd, untimely filed) (defendant complained
of grand jury foreman's testimony, arguing code of criminal procedure required grand jurors to keep
proceedings secret; held that because indictment alleged injury by "object unknown" and State was
therefore required to prove what evidence grand jury considered, it was not error to allow testimony). 

 Even assuming that it was error to allow the testimony, this error did not harm
appellant's rights to a fair trial. The juror gave very brief testimony, stating that the grand jury heard
evidence that a knife or sharp object was used in the attack. Appellant argues that the testimony was
"totally unnecessary" and only bolstered the victim's testimony that her attacker used a knife in the
attack. However, appellant stipulated that the victim had been attacked and did not dispute her
testimony that a knife was used, instead focusing on her description of the knife. Therefore, the
grand juror's brief testimony could not have affected appellant's rights or led to an improper verdict
in any way. See Tex. R. App. P. 44.2(b) (non-constitutional error that does not "affect substantial
rights must be disregarded"); Barrera, 982 S.W.2d at 416-17. We overrule appellant's third issue
on appeal.


Conclusion


 Having overruled appellant's issues on appeal, we affirm the trial court's judgment.



 __________________________________________

 David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: December 2, 2004

Do Not Publish

1. In fact, the jury submitted a request during deliberations asking to have testimony about
the DNA testing process repeated.