# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00203-CR

**Luis Acuna, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
### NO. 9024193, HONORABLE JON N. WISSER, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury convicted appellant Luis Acuna of aggravated sexual assault. Acuna pleaded true to three prior convictions for indecency with a child, and the trial court sentenced him to life in prison. He appeals, complaining in three issues that he received ineffective assistance of counsel and that the trial court erred in allowing certain testimony. We affirm the judgment of conviction.

### Background

Appellant does not dispute the sufficiency of the evidence, but for purposes of this appeal, a very brief recitation of the facts may be helpful. The victim, a fifteen-year-old girl, was attacked while jogging, dragged off the path at knife point, and sexually assaulted. She could not see her attacker's face clearly because the man stayed behind her. After the attack, she called for

help, went home, and put her clothes into her laundry hamper. A few hours later she took them out of the hamper, placed them in a bag, and gave the bag to her father. Her father locked the bag of clothes in his car until he gave them to the police as evidence three days later. Semen found on the victim's underwear matched appellant's DNA, which was already on file because appellant was under investigation for two similar attacks in which L.M. and M.B. were pulled off jogging paths and raped at knife point. At the time of this trial, appellant had recently been convicted and sentenced to life imprisonment in the attack on L.M. and was awaiting trial for the attack on M.B.

**Ineffective Assistance of Counsel**

In his first issue, appellant asserts that he received ineffective assistance of counsel. He attacks the following alleged deficiencies by his counsel: (i) counsel's questioning of a police analyst, which resulted in testimony that appellant's DNA had been tested in an earlier case, thus informing the jury of appellant's recent conviction for sexual assault and another pending charge for sexual assault; (ii) counsel's failure to object to the admission of a piece of the victim's clothing even though there was a missing link in the chain of custody; (iii) counsel's statement to the judge that cumulating appellant's sentence was mandatory, when in fact it was discretionary; and (iv) counsel's failure to put on mitigating evidence during the punishment phase of trial.

To show ineffective assistance of counsel, a defendant must first show that counsel's performance fell below an objective standard of reasonableness, and second, that the deficient performance prejudiced the defendant's case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); *Blevins v. State*, 18 S.W.3d 266, 271

2

(Tex. App.—Austin 2000, no pet.). The defendant bears the burden of (1) overcoming a strong presumption that counsel's performance fell within the range of reasonable professional assistance and (2) bringing forth a record showing that counsel's performance was not based on sound trial strategy. *Blevins*, 18 S.W.3d at 271. When the record is silent as to possible trial strategies, we will not speculate as to why counsel acted in a particular way. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); *Mayhue v. State*, 969 S.W.2d 503, 511 (Tex. App.—Austin 1998, no pet.). We evaluate trial counsel's effectiveness from his perspective at trial, not in hindsight, and we consider the representation in its totality, rather than focusing solely on isolated acts or omissions. *Mayhue*, 969 S.W.2d at 510. In a case such as this one, when there is no evidentiary hearing on the issue of effectiveness, the defendant's burden is difficult to meet, and rarely will we find counsel ineffective. *Blevins*, 18 S.W.3d at 271-72 (quoting *Thompson*, 9 S.W.3d at 813); *see Mayhue*, 969 S.W.2d at 511.

### 1. Testimony Regarding Other Assaults

Appellant complains that his counsel was deficient in eliciting testimony about his recent sexual assault conviction. Jane Burgett, a DNA analyst with the Department of Public Safety, testified about the DNA evidence found on the victim's underwear and stated that it matched appellant's DNA. Appellant's counsel asked Burgett about the DNA testing she performed in an investigation into the assault on L.M., and the State then asked about M.B.'s assault. In closing arguments, counsel argued that appellant's semen, taken from L.M. at about the same time Burgett was testing this victim's underwear, might have contaminated the evidence in this case, hoping to

3

raise doubt in the jury's minds that appellant was the victim's attacker.[1]  We will not second-guess

counsel's reasoning and trial strategy.  *See Jackson*, 877 S.W.2d at 771; *Mayhue*, 969 S.W.2d at 511.

## 2.  *Admission of the Victim's Clothing*

Appellant next complains that his counsel should have objected to the admission of

the victim's clothing, arguing that there was a gap in the chain of custody tag on the bag containing

her underwear.

Several witnesses from the Austin Police Department and the Department of Public

Safety testified about the handling of the bag containing the victim's clothes.  Detective Sharon Soliz

testified that she obtained the clothes from the victim's father, placed each item in its own evidence

bag, initialed and dated the chain of custody tags attached to each bag, placed the individual bags

into a larger sack, then sealed, initialed, and dated the larger sack.  When the clothes were received

by the Department of Public Safety laboratory, the outer bag was sealed.  The chain of custody tag

on the outside bag shows initials or signatures by Soliz, a technician who received and tracked the

evidence while it was out for testing, and an employee of the Department of Public Safety laboratory.

Within the larger sack, all but one of the smaller sacks have a second set of initials; the smaller sack

lacking the second set of initials contained the victim's underwear, on which semen was found.

Soliz testified that the second initials were by the evidence clerk, who witnessed Soliz put the

individual bags into the larger sack and seal the larger sack.  The victim testified at trial that the

---

[1]  In fact, the jury submitted a request during deliberations asking to have testimony about the DNA testing process repeated.

clothing presented, including the underwear, was what she was wearing when she was attacked. Before the clothing was admitted into evidence, appellant's counsel thoroughly questioned the witnesses who handled the clothing to determine the operating procedures they had used and then stated that he had no objection to the admission of the evidence.

The State correctly points out that once an initial showing has been made that the evidence is "what its proponent claims," *see* Tex. R. Evid. 901(a), and "[w]ithout evidence of tampering, most questions concerning care and custody of a substance go to the weight attached, not the admissibility, of the evidence." *Lagrone v. State*, 942 S.W.2d 602, 617 (Tex. Crim. App. 1997); *see Porter v. State*, 969 S.W.2d 60, 66 (Tex. App.—Austin 1998, pet. ref'd) (if relevant characteristics are distinguishable only by scientific analysis, State must prove beginning and end of chain of custody; "any gaps in the interim go to the weight of the evidence, not admissibility" and "[m]inor theoretical or speculative breaches in the chain, without affirmative evidence of impropriety, do not affect the admissibility of the evidence"). The record shows that the evidence was what its proponent claimed it was, the clothing the victim was wearing when she was attacked. Appellant's counsel asked numerous questions regarding the handling of the clothing and then pointed to the missing initials in his closing argument in an attempt to undermine the weight of the DNA evidence taken from the victim's clothing. Counsel may have known that once the initial showing under rule 901 was made, any problems with the chain of custody would go to the weight of the evidence but would not bar the evidence's admission, and his decision not to object to the evidence's admission may have been a valid trial strategy. We will not second-guess counsel's decision not to object to the evidence.

*3. Sentencing*

Appellant last argues that his counsel was deficient in the punishment stage of trial because counsel stated, "I believe it's mandatory by the language," during a discussion about what sentence should be assessed and whether it should run consecutively with another sentence. Appellant also complains of counsel's failure to present mitigating evidence that might have persuaded the trial court to allow the sentences to run concurrently.

Under the penal code, if a person is convicted of aggravated sexual assault after having been convicted of indecency with a child, the person must be sentenced to life imprisonment. Tex. Pen. Code Ann. § 12.42(c)(2) (West Supp. 2004-05). If a person is convicted of an offense after having already been convicted in another case and while the earlier sentence has not yet ceased to operate, it is left to the trial court's discretion to decide whether the sentence imposed in the second conviction should run concurrently with the first sentence or begin when the first sentence has run. Tex. Code Crim. Proc. Ann. art. 42.08(a) (West Supp. 2004-05).

During the punishment phase, appellant pled true to three prior convictions of indecency with a child by exposure; aside from the State's offering proof of the prior convictions, neither side put on any evidence. The trial court asked appellant's counsel, "The State is seeking a sentence of life in prison to run consecutively to the prior sentence that your client has received. Did you wish to present any argument as to what you think the Court can and should do?" Counsel replied, "Well, Your Honor, I believe it's mandatory by the language. I have no argument." Appellant contends that this failure to argue against a consecutive sentence amounted to ineffective assistance of counsel, arguing that "[t]elling the judge cumulation was mandatory was clearly

6

prejudicial." However, we do not read counsel's statement as agreeing that stacked sentences were mandatory. Instead, he might have been agreeing that imposition of a life sentence was mandatory, which is a correct statement of the law. *See* Tex. Pen. Code Ann. § 12.42(c)(2). Based on this record, we cannot hold that counsel's remark was erroneous and amounted to ineffective assistance of counsel.

As for appellant's contention that his counsel was ineffective in failing to put on mitigating evidence, the record does not show and appellant does not explain or even allude to any possible mitigating evidence that counsel might have presented. *See Narvaiz v. State*, 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) ("since appellant does not explain what mitigating evidence his trial counsel should have proffered, we cannot possibly find that a failure to proffer such evidence constituted ineffective assistance"); *Thompson v. State*, 915 S.W.2d 897, 905 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd) ("Here, the record does not indicate that mitigating evidence existed. Therefore, we cannot determine if the failure to present such evidence constitutes ineffective assistance."). Even if such evidence was available, counsel may have decided not to present that evidence based on a valid trial strategy. *See Burger v. Kemp*, 483 U.S. 776, 794-95 (1987) (counsel reasonably decided not to present mitigating evidence, determining that cross-examination could reveal prejudicial matters); *Ex parte Kunkle*, 852 S.W.2d 499, 506 (Tex. Crim. App. 1993) (counsel "made a tactical decision to neither present nor proffer this [mitigating] evidence at the punishment stage," and court was "unable to conclude that such a deliberate decision, under the circumstances . . . , rendered applicant's trial counsel unreasonable at the time of trial").

7

Appellant has not shown that his counsel failed to investigate potential mitigating evidence or that any such evidence existed. Nor has appellant shown that his case was prejudiced by any failing on his counsel's part. *See Thompson*, 9 S.W.3d at 812. Based on this record, appellant has not carried his burden of showing ineffective assistance of counsel. We overrule appellant's first issue on appeal.

**Testimony by the Victim's Father**

Appellant next contends that the trial court erred in allowing the victim's father to testify after he was present in the courtroom while the victim testified. Appellant argues that this alleged error was of constitutional dimension and deprived him of his right to have "witnesses testify without the opportunity of corroboration" and thus, of his right to a fair trial.

The victim testified that after she was attacked, she gave the clothing she was wearing to her father. The victim's father was then called to the stand. He testified without objection that a few hours after the attack his daughter took her clothes out of the laundry hamper, put them in a bag, and gave them to him for safekeeping. He locked the bag of clothes in his car until he gave them to Detective Soliz three days later.

Initially, we note that any objection to the father's testimony was waived by a failure to object at trial. *See* Tex. R. App. P. 33.1(a). Further, although the rules of evidence provide that upon request, a trial court should exclude witnesses from the courtroom so they cannot hear testimony by other witnesses, *see* Tex. R. Evid. 614, the rule is somewhat different in criminal cases. In a criminal case, a witness who is a guardian of the victim should only be excluded if the trial court determines that the witness's testimony "would be materially affected if the witness hears other

testimony." Tex. Code Crim. Proc. Ann. art. 36.03(a) (West Supp. 2004-05). The victim was the first witness, followed immediately by her father. Having read their testimony, appellant has not shown that even if an objection had been raised and an offer of proof made to justify the exclusion, *see id*. art. 36.03(b), it would have been an abuse of discretion to allow the father to remain in the courtroom while his daughter testified. *See Carlile v. State*, 451 S.W.2d 511, 512 (Tex. Crim. App. 1970). Nor does the record support appellant's claim that any such error was constitutional and denied him a fair trial. *See Barrera v. State*, 982 S.W.2d 415, 416-17 (Tex. Crim. App. 1998) (generally, failure to apply statute, even one arising from constitutional mandate, does not amount to constitutional error; constitutional error is more than simple technical violation and directly implicates constitutional rights). We overrule appellant's second issue on appeal.

### Testimony by a Grand Juror

Finally, appellant asserts error in the trial court's allowing testimony by a grand juror who sat on the grand jury that indicted appellant, arguing that it violated the general rule that grand jury proceedings are to be kept secret. *See Stern v. State ex rel Ansel*, 869 S.W.2d 614, 621-22 (Tex. App.—Houston [14th Dist.] 1994, writ denied).

The amended indictment in this case alleged that appellant used "a knife and a sharp object to the Grand Jury unknown" during the attack. When an indictment alleges that an unknown weapon was used but the evidence at trial identifies the weapon, the State must prove that the grand jury used due diligence in determining the weapon used in the crime. *Rosales v. State*, 4 S.W.3d 228, 231 (Tex. Crim. App. 1999) (quoting *Hicks v. State*, 860 S.W.2d 419, 424 (Tex. Crim. App. 1993)); *Matson v. State*, 819 S.W.2d 839, 847 (Tex. Crim. App. 1991). The grand juror was called

9

to testify as a precaution against an attack on the indictment, and calling a grand juror to testify is the usual method used to establish due diligence. *See Matson*, 819 S.W.2d at 847 n.5 (State has burden of proof of whether object was unknown and whether grand jury utilized due diligence in ascertaining its nature; "[u]sually this is done through the testimony of one of the grand jurors who sat on the case"). Because of the allegation in the indictment and the proof presented at trial, allowing the grand juror to testify was not error. *See id.*; *see also Rosales*, 4 S.W.3d at 231 (prosecution satisfied due diligence requirement "when it proved through one of the grand jurors that the grand jury was unable to find out what object caused the various injuries"); *Craig v. State*, 704 S.W.2d 948, 951 (Tex. App.—Fort Worth 1986, pet. ref'd, untimely filed) (defendant complained of grand jury foreman's testimony, arguing code of criminal procedure required grand jurors to keep proceedings secret; held that because indictment alleged injury by "object unknown" and State was therefore required to prove what evidence grand jury considered, it was not error to allow testimony).

Even assuming that it was error to allow the testimony, this error did not harm appellant's rights to a fair trial. The juror gave very brief testimony, stating that the grand jury heard evidence that a knife or sharp object was used in the attack. Appellant argues that the testimony was "totally unnecessary" and only bolstered the victim's testimony that her attacker used a knife in the attack. However, appellant stipulated that the victim had been attacked and did not dispute her testimony that a knife was used, instead focusing on her description of the knife. Therefore, the grand juror's brief testimony could not have affected appellant's rights or led to an improper verdict in any way. *See* Tex. R. App. P. 44.2(b) (non-constitutional error that does not "affect substantial

10

rights must be disregarded"); *Barrera*, 982 S.W.2d at 416-17.  We overrule appellant's third issue on appeal.

## Conclusion

Having overruled appellant's issues on appeal, we affirm the trial court's judgment.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   December 2, 2004

Do Not Publish

11