

**In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana**

_____

No. 06-09-00231-CR

_____

RICKEY ALFRED WALKER, A/K/A RICKEY WALKER, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 349th Judicial District Court
Houston County, Texas
Trial Court No. 09-CR-073

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

A Houston County jury found Rickey Alfred Walker, a/k/a Rickey Walker, Jr., guilty of burglary of a habitation with the use of a deadly weapon and assessed punishment at fifty years' imprisonment in the Texas Department of Criminal Justice–Institutional Division.[1] Walker appeals,[2] claiming (1) the evidence is legally and factually insufficient to support the verdict; (2) the trial court erred in denying a requested jury instruction on self-defense; and (3) the trial court erred in denying his motion for new trial predicated on juror misconduct. We affirm the judgment of the trial court.

## I. BACKGROUND

In the early morning hours of November 22, 2008, Walker, dressed entirely in black and wearing gloves, visited the home of his lifelong friend, Jason Whitt.[3] Walker knocked on the door and asked Whitt for thirty dollars. When Whitt indicated that he did not have thirty dollars,

---

[1]See TEX. PENAL CODE ANN. § 30.02 (Vernon 2003). The punishment range for this first degree felony was enhanced due to a prior felony conviction.

[2]This case was transferred to this Court from the Tyler Court of Appeals as part of the Texas Supreme Court's docket equalization program. We are not aware of any conflict between the precedent of the Tyler Court and the precedent of this Court on any issue relevant in this appeal. See TEX. R. APP. P. 41.3.

[3]Walker made three visits to the Whitt home shortly before the shooting. Walker visited the Whitt home around midnight on November 21, 2008, and returned at approximately 2:00 a.m. Walker returned again at approximately 4:00 a.m. There were no arguments between Whitt and Walker, and there was no reason to believe there was a problem. Latechia Whitt, the wife of Whitt, was expected at work early in the morning, and was displeased with the frequent visits during the night. When Walker's 4:00 a.m. visit awakened Latechia, she arose and readied herself for work, leaving at approximately 5:30 a.m. Prior to leaving for work that morning, Latechia did not notice any antagonism between Whitt and Walker, but did notice that something was strange.

2

Walker pulled a gun from his pocket and shot Whitt.[4] When Whitt fell to the floor, Walker stepped past him and entered the home.[5] Whitt attempted to pull himself to the kitchen table, but upon doing so was attacked by Walker with a knife.[6] Walker then began to look around the house while speaking incomprehensibly.[7] As Whitt began to drag himself to the telephone next to the bed, Walker again approached him, still carrying the gun. At that point, Whitt bit Walker's hand and Walker fell back, dropped the gun, and ran out the door. Whitt grabbed the gun and tried to use it, but it failed to fire. He does not know how the gun ended up under the couch and has no idea why Walker shot him.[8]

Fortuitously, "Bobby"[9] arrived at the Whitt home shortly after Walker departed, and upon discovering Whitt's injured and bloody body, immediately called 9-1-1. Whitt then called his wife and told her to come quick, because he had been shot. He also called his cousin and nearby neighbor, James Tubbs. Tubbs was on the scene attempting to help Whitt when Latechia arrived. Tubbs observed blood on the threshold of the doorway and on the floor in the kitchen. Tubbs also

---

[4]Even though Walker fired the gun twice, Whitt was struck only once.

[5]Because Whitt was dressed in his underclothes, the two were talking through the partially opened door.

[6]Walker inflicted knife injuries to Whitt's neck, arm, and right shoulder.

[7]Whitt testified that Latechia left twenty-five or thirty dollars lying on the table, which disappeared. Although he did not see Walker take anything from his home, Whitt believes Walker took this money.

[8]Whitt has a prior conviction for possession of a stolen firearm, and does not own a gun. He is currently on parole for burglary of a habitation. As a result of these convictions, Whitt is not permitted to possess firearms.

[9]"Bobby" is identified in other evidence as Bobby Betsill.

3

observed a small gray vehicle parked in the driveway, which appeared to be the vehicle Walker usually drove. When the emergency medical service arrived, Tubbs returned home.

After months of medical treatment, Whitt was released from the hospital, but must now walk with the aid of crutches.

## II. SUFFICIENCY OF THE EVIDENCE

We review the legal and factual sufficiency of the evidence supporting a conviction under well-established standards. In conducting a legal sufficiency review, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We must give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). We are not required to determine whether we believe that the evidence at trial established guilt beyond a reasonable doubt; rather, when faced with conflicting evidence, we must presume that the trier of fact resolved any such conflict in favor of the prosecution, and we must defer to that resolution. *State v. Turro*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). In conducting a factual sufficiency review, we consider the evidence in a neutral light. *Watson v. State*, 204 S.W.3d 404, 414–15 (Tex. Crim. App. 2006).

4

We may find evidence factually insufficient in two ways:  (1) the evidence supporting the conviction is "too weak" to support the fact-finder's verdict, or (2) considering conflicting evidence, the fact-finder's verdict is against the great weight and preponderance of the evidence. *Laster*, 275 S.W.3d at 518.  In so doing, we may find the evidence insufficient when necessary to prevent manifest injustice. *Id*.  Although we give less deference to the verdict in a factual sufficiency review, we will not override the verdict simply because we disagree with it. *Id*.  Both legal and factual sufficiency are measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *see also Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008).

Walker contends this is not the story of an aggravated burglary; rather, it is the story of a drug deal gone awry.  He claims the evidence is insufficient to support a rational trier of fact's conclusion of specific intent to unlawfully enter Whitt's home to commit aggravated assault. Instead, Walker maintains the evidence shows that Whitt was the initial aggressor, a struggle ensued, and Whitt was shot.  In its best light, Walker claims the State's evidence only proves that Walker shot Whitt prior to entering the premises and that such entry was not necessarily without consent.  He points out that there is no evidence that he was in possession of the gun in question subsequent to the shooting, while there is evidence that the gun belonged to Whitt and was hidden to avoid detection and criminal charges.  We examine the crucial evidence in light of these complaints.

## A. Testimony of Jason Whitt

Whitt has known Walker since the time he started school in Grapeland. The two were classmates and have been friends since their school days. There were no problems between the two friends prior to this incident. Walker visited Whitt's home fairly frequently, and was welcome to do so.

Walker paid Whitt a visit on the evening of November 21, while Whitt was clearing off some land next to his house. In the early morning hours of November 22, after Whitt had retired for the evening, Walker returned. An external security camera was installed at Whitt's front door,[10] so he knew Walker to be his visitor. When Whitt answered the door, Walker asked if he could leave his car in Whitt's yard and asked Whitt to hold onto the keys, which were placed on the table inside the house.[11] Whitt does not recall other topics the two might have discussed, but there was no argument.

When Walker returned to Whitt's home at approximately 6:00 a.m., he was dressed in black and wearing gloves. Walker and Whitt were talking through a partially opened door, and Walker demanded money. When Whitt refused, Walker pulled a gun from his pocket and shot Whitt. Walker then inflicted slashing injuries upon Whitt with a knife, and looked through the

---

[10]The camera system, according to Whitt, was installed because items in his yard were being stolen.

[11]Walker left his car in Whitt's driveway, but failed to explain why he left it there. On November 21, Whitt loaned Walker twenty dollars, and Whitt expected to be repaid. Whitt maintained that the car and car keys were not security for repayment of this loan. As far as Whitt knew, the car was still in the driveway when Walker returned at 6:00 a.m.

6

house. As Whitt made his way toward the telephone, Walker approached him and Whitt bit Walker's hand, whereupon Walker dropped the gun and fled the premises. At no point did Whitt invite Walker into his house that morning; Walker made his way into the house only after he shot Whitt. Whitt did not see Walker take anything from his home except Walker's own car keys, which were on the kitchen table.

Whitt never discussed the gun with Betsill and never told Betsill the gun belonged to Whitt.

### B. The Testimony of James Tubbs

Tubbs[12] received a telephone call from Whitt at approximately 7:45 a.m. on November 22, in which Whitt indicated that he was hurt. When Tubbs arrived at Whitt's home, a person unknown to Tubbs was already there, and had called 9-1-1. There were a number of onlookers present, and Tubbs did not see a gun inside or outside of the house. There was a small gray vehicle in Whitt's driveway, which looked like the vehicle Walker usually drove.

### C. The Testimony of Justin Lumbreraz and Susan Rowden

Lumbreraz and Rowden are emergency medical technicians (EMTs) who rendered medical care to Whitt and transported him by ambulance to the hospital. When the EMTs moved the couch to treat Whitt, a small, semiautomatic handgun was located under the couch. Rowden brought a deputy into the house and showed him the gun. When Lumbreraz and Rowden left with Whitt, the gun was still inside the house.

---

[12]Tubbs has known Whitt all of his life and is Whitt's cousin and neighbor.

7

There was blood in the living room and on the porch, with a large puddle of blood just inside the front door and another large puddle of blood in the middle of the kitchen floor. Whitt was conscious, talking and saying that he had been shot. The gunshot wound was under the right breast area. The bullet remains lodged in the lower lumbar spine area.

### D.    The Testimony of Roger Dickey

Dickey is a county commissioner for Houston County, but at the time of this occurrence (in November 2008), he was the chief of police for the City of Grapeland. Dickey arrived at the crime scene along with the emergency medical service. He was not made aware of the fact that there was a gun inside the residence, and when he and other law enforcement searched for Walker, the premises were left unsecured.

While photographing the scene, Dickey located a shell casing on the front porch and a second shell casing in the kitchen. He located a small knife on the front porch next to the door and noticed a pool of blood on the kitchen floor. After transporting evidence from the scene to his office, Dickey realized there was a missing gun. Tubbs was questioned about it and denied any knowledge of the gun. The gun was recovered on the following Tuesday, when an anonymous caller indicated it was located in the barbeque pit on the porch of the Whitt home. The gun was not dusted for fingerprints, but was identified as the gun used in Whitt's shooting.

According to Dickey, drug houses share certain common features; an exterior camera is one of those features. The Whitt house was affixed with an exterior camera which enabled one

viewing a television screen inside the house to determine the identity of a person at the front door. Black plastic covering on the windows of a house, like the Whitt house, is also consistent with drug activity. While Dickey had received allegations in the past regarding drug activity surrounding Whitt and his residence, he was never able to make a case on Whitt for any kind of drug activity. When Dickey searched the Whitt residence for the missing bullet,[13] he did not locate any drugs or drug paraphernalia, nor did he find anything in the house that would indicate drug activity was taking place there.

### E.      The Testimony of Bobby Betsill

On the morning of November 22, Betsill was in search of a co-employee who failed to show up for work at a construction job. He thought this individual might be at Whitt's house, so Betsill decided to check there. Upon his arrival, Betsill noticed a gray car in the driveway. A young lady by the name of Marsheal Kennedy was standing outside by the car. When Betsill knocked on the door, Whitt told him to come in, that he "ha[d] been jacked." After Betsill called 9-1-1, he asked Whitt whose gun was in the house; Whitt said it belonged to him. Betsill, who admitted to being under the influence of drugs at the time he arrived at Whitt's house, left before the EMTs arrived. Even though he was under the influence, Betsill maintained that his memory

---

[13]Two shots were fired and two shell casings were located. One bullet was located at the base of Whitt's spine. The second bullet was never located.

of the events of November 22 was not affected.[14]

### F. The Testimony of Marsheal Kennedy and Johnny Pierson

Kennedy has known both Whitt and Walker for over ten years. In November 2008, she was Walker's girlfriend.[15] Kennedy identified the firearm used in the shooting, and testified that she stole the gun from her aunt, Pierson. Kennedy acquired the gun several weeks before the shooting and sold the gun to Whitt two or three days after having taken it from Pierson's residence. Kennedy admits she relayed a different version of events to the district attorney's office, stating that she sold the gun to someone outside a club.[16]

Pierson filed a police report after Kennedy stole her gun. She also gave a statement to the police on November 22, 2008, regarding the theft of the gun, the day after it was stolen. She claims the gun was therefore stolen the day before the shooting, on November 21.

## III. THE EVIDENCE IS LEGALLY AND FACTUALLY SUFFICIENT TO SUPPORT THE VERDICT

Walker complains that the evidence, even when viewed in the light most favorable to the verdict, does not prove beyond a reasonable doubt that he entered Whitt's home with the intent to commit an aggravated assault. In support of this proposition, Walker relies on *Langs v. State*, 183

---

[14]Betsill has several felony convictions and has served time in prison on four occasions. At the time of trial, Betsill had recently been released from a drug rehabilitation center.

[15]At the time of trial, Kennedy was incarcerated in the Harris County jail for intent to deliver a controlled substance.

[16]Kennedy explained that she did not want to get involved and was using crack cocaine at the time. She denied ever having purchased drugs from Whitt.

S.W.3d 680 (Tex. Crim. App. 2006). While *Langs* centers on the issue of double jeopardy, it recognizes that "[a] person charged with burglary under Section 30.02(a)(1)[17] is guilty of that offense the moment that he crosses the threshold of a habitation without consent and with intent to commit the underlying felony." *Id.* at 686.

In this case, the jury was instructed not only on burglary as defined under Section 30.02(a)(1) of the Texas Penal Code (entry with intent to commit aggravated assault), but also as defined under Section 30.02(a)(3) of the Texas Penal Code (entry and the commission—or attempted commission—of aggravated assault). TEX. PENAL CODE ANN. § 30.02(a)(1), (3) (Vernon 2003). Although an indictment may allege different methods of committing an offense in the conjunctive, it is proper for the jury to be charged in the disjunctive. *See Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991). The State may plead alternative theories of an offense that the evidence may ultimately prove. *Rosales v. State*, 4 S.W.3d 228, 236 (Tex. Crim. App. 1999). The State is allowed to plead in the conjunctive if proof of any one theory of the offense will support a guilty verdict. *Id.* When, as here, the State pleads in the alternative, it is not required to prove guilt under all of the theories alleged. If the State establishes proof of guilt under one theory, the conviction will stand against a challenge to the sufficiency of the evidence. *Id.*; *see also Brooks v. State*, 990 S.W.2d 278, 283 (Tex. Crim. App. 1999) (en banc) ("When a jury

---

[17]TEX. PENAL CODE ANN. § 30.02(a)(1) ("A person commits an offense if, without the effective consent of the owner, the person . . . enters a habitation . . . with intent to commit a felony, theft, or an assault.").

11

returns a general guilty verdict on an indictment charging alternative theories of the same offense, the verdict stands if the evidence supports any of the theories charged.").

Under Section 30.02(a)(3) as the applicable statute, the hypothetically correct charge would require the jury to find, beyond a reasonable doubt, that Walker, on or about November 22, 2008, (1) intentionally or knowingly entered a habitation, (2) without the effective consent of Whitt, the owner thereof, and (3) attempted to commit or committed the felony offense of aggravated assault.[18] When the prosecution is based on the commission of an assault, the assault supplants the need to prove specific intent accompanying the entry. *DeVaughn v. State*, 749 S.W.2d 62, 65 (Tex. Crim. App. 1988).

After considering all of the evidence cited above, we conclude the evidence is legally and factually sufficient to prove Walker entered Whitt's home without permission and committed the crime of aggravated assault in accordance with Section 30.02(a)(3) of the Texas Penal Code;[19] therefore, we need not address the issue of whether Walker gained unauthorized entry into Whitt's home with the intent to commit aggravated assault. *See Brooks*, 990 S.W.2d at 283.

Walker claims the evidence supports his theory that Whitt, who was angry with Walker over a drug deal, was actually the aggressor. Much of this argument is based upon inference.

---

[18]A person commits the offense of aggravated assault if the person intentionally, knowingly, or recklessly causes serious bodily injury to another or causes bodily injury to another and the person uses or exhibits a deadly weapon during the commission of the assault. *See* TEX. PENAL CODE ANN. § 22.02 (Vernon Supp. 2009).

[19]TEX. PENAL CODE ANN. § 30.02(a)(3).

Walker points to the issue of gun ownership and its disappearance. Kennedy testified she sold the gun to Whitt, and Betsill testified that Whitt told him—while Whitt was in severe pain from a gunshot wound and knife injuries—that the gun was his.[20] The gun was located at the scene of the crime and mysteriously disappeared only to reappear a few days later. Walker contends this evidences ownership by Whitt, who, if found in possession of a firearm, would have been in violation of his parole. Further, Walker contends the evidence shows that Whitt is a drug dealer, with a camera fixed at the entrance to his home and black plastic covering the windows. Walker owed Whitt money, and it is alleged Walker's car and the car keys were left in Whitt's possession as security.

A reviewing court conducting a factual sufficiency analysis necessarily considers any reasonable alternative hypothesis raised by the evidence. The very nature of a factual sufficiency review requires the court to consider all of the evidence presented at trial and not just that which is favorable to the verdict. *See Cain v. State*, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997). However, the mere existence of an alternative reasonable hypothesis does not render the evidence factually insufficient. Even when an alternative reasonable hypothesis is raised by the evidence, the standard of review remains the same. A verdict may be overturned only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996).

---

[20]Whitt denied gun ownership.

13

The factors listed above, along with certain evidence which indicates that the bullet entered Whitt's body below the right chest and lodged in the lower back, could be indicative of a struggle between the two men over a gun already in Whitt's possession. However, there is evidence in the record which counters this theory: (1) upon a search of Whitt's home, there was no evidence that would indicate drug activity was taking place there; (2) Whitt denied ownership of the gun; (3) there was evidence allowing the jury to question the testimony of Kennedy, who testified she sold the gun to Whitt, given her recent fabrication to the district attorney's office as well as her relationship with Walker;[21] (4) likewise, the jury could have determined that Betsill, who testified Whitt told him the gun belonged to him, also had some credibility issues,[22] and he admitted to being under the influence of drugs while the conversation with Whitt was taking place; (5) the large areas of blood by the kitchen table and by the couch support Whitt's rendition of the events of November 22; (6) money was missing from Whitt's home; (7) Whitt testified that he did not invite Walker into his home and entry was made into the home after Whitt was shot; and (8) there is no testimony that Whitt instructed or requested anyone to hide the gun. We are to give proper deference to the role of the jury which considered all of this evidence and by its verdict resolved the conflicts against Walker. *Jones v. State*, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996).

---

[21]Kennedy testified that she had stolen the gun weeks before the shooting, but Pierson testified the gun was stolen on November 21.

[22]Betsill testified that Kennedy was outside the Whitt home when he arrived that morning, and Kennedy testified that she was not there. Betsill contradicted his own testimony when he initially stated that he saw Kennedy when he arrived at Whitt's home and later testified that he did not see her until he left the house.

14

Upon objective review of the record, we cannot say that the evidence is so weak that the finding is clearly wrong and manifestly unjust. We further do not find the verdict to be against the great weight and preponderance of the conflicting evidence. We therefore conclude that the evidence is not only legally sufficient, it is also factually sufficient to support the verdict of guilt.

## IV. THE TRIAL COURT DID NOT ERR IN DENYING WALKER'S REQUEST FOR A JURY INSTRUCTION ON SELF-DEFENSE

During the charge conference at the guilt/innocence phase, Walker requested a self-defense instruction, which the trial court denied. Walker contends the trial court erred by denying his request for such an instruction. Walker's theory here is the same—Whitt initiated the aggression, by use and threat of a gun, and was shot when Walker acted to defend himself.

A defendant is entitled to an instruction on self-defense if the issue is raised by the evidence, whether that evidence is strong or weak, regardless of what the trial court may think about the credibility of the defense. *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001); *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999). Before a defendant is entitled to a self-defense instruction, however, there must be some evidence, when viewed in the light most favorable to the defendant, that will support the claim. *Ferrel*, 55 S.W.3d at 591; *Hill v. State*, 99 S.W.3d 248, 250 (Tex. App.—Fort Worth 2003, pet. ref'd). Thus, entitlement to a self-defense instruction is predicated on the provision of some evidence that the defendant was authorized to utilize force against another. "[A] defense is supported (or raised) by the evidence if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would

15

support a rational inference that that element is true." *Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007). A defendant need not testify in order to raise a defense. *Boget v. State*, 40 S.W.3d 624, 626 (Tex. App.—San Antonio), *aff'd*, 74 S.W.3d 23, 31 (Tex. Crim. App. 2001). Defensive issues may be raised by the testimony of any witness, even those called by the State. *Jackson v. State*, 110 S.W.3d 626, 631 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). When reviewing a trial court's decision to deny a requested defensive instruction, "we view the evidence in the light most favorable to the defendant's requested submission." *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006). However, "if the evidence, viewed in the light most favorable to the defendant, does not establish self-defense, the defendant is not entitled to an instruction on the issue." *Ferrel*, 55 S.W.3d at 591.

Walker argues that there was evidence presented that he acted in self-defense and, therefore, the trial court should have included a self-defense instruction in the charge. He directs our attention to the following evidence: (1) Whitt's cross-examination; (2) the testimony of Latechia regarding Whitt's possession of weapons; (3) the location of the shell casings as being inconsistent with Whitt's version of events; (4) Kennedy's testimony regarding the reason Whitt may have had some issues with Walker beyond the financial aspects of their drug transactions; and (5) Betsill's testimony that Whitt owned the gun, as acknowledged to Betsill by Whitt.

There is some evidence that Whitt had owned guns in the past, but he denied ownership of the gun in question. While both Kennedy and Betsill testified that Whitt owned the gun, Whitt

16

denied this and emphatically stated that there were no guns in his house. Kennedy's testimony failed to provide any insight into potential discord between Walker and Whitt, and the evidence regarding the location of the two shell casings is inconsequential. Whitt testified that Walker fired twice, but only one bullet hit him. One shell casing was found on the porch, where Walker was standing when he fired the gun, and the second casing was found in the living room—the bullet having missed Whitt.

Likewise, Latechia's testimony that Whitt possessed firearms in the year before the shooting is not probative of the issue of Walker's immediate need to use deadly force against Whitt on the morning of November 22. Even if the gun belonged to Whitt, as Kennedy and Betsill testified, there is no evidence that Whitt in any way threatened Walker with the gun or caused Walker to believe that force, much less deadly force, was immediately necessary to defend himself.[23]

Moreover, self-defense is a justification for one's actions and necessarily requires an admission that the alleged conduct occurred. "[T]o rely on 'self-defense,' the defendant must first admit," or "substantially admit," "committing the conduct which forms the basis of the indictment; the defense is inconsistent with a denial of the conduct." *See East v. State*, 76 S.W.3d 736, 738 (Tex. App.—Waco 2002, no pet.); *see also Young v. State*, 991 S.W.2d 835, 838 (Tex. Crim. App. 1999) (concluding that in order to assert defensive issue of necessity, defendant must

[23]Walker claims his decision not to testify was a prohibitive factor in permitting the inclusion of a self-defense issue, and thus, it emasculates his privilege against self-incrimination under the Fifth Amendment to the United States Constitution. However, Walker does not raise this issue as a point on appeal and we therefore do not address it.

admit conduct charged in indictment); *Kimbrough v. State*, 959 S.W.2d 634, 640 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd) (holding "[s]elf-defense is a justification for one's actions and necessarily requires an admission of the conduct at issue"). While the defendant need not admit the commission of every statutory element of the offense, he or she must admit committing the conduct giving rise to the indictment. *See Jackson*, 110 S.W.3d at 631; *Gilmore v. State*, 44 S.W.3d 92, 97 (Tex. App.—Beaumont 2001, pet. ref'd). Here, Walker did not admit to the conduct charged. Moreover, the evidence is not sufficient to raise this defensive issue. We overrule this point of error.

## V. THE TRIAL COURT DID NOT ERR IN DENYING WALKER'S MOTION FOR NEW TRIAL

### A. Alleged Juror Misconduct

Walker's motion for new trial was based on perceived jury misconduct. Demetrius Wyatt was a juror on this case—one who allegedly knew Whitt from prior drug dealings. At the hearing on motion for new trial, Kelvin Craig, then incarcerated at the Houston County jail for assault, possession of firearms, and deadly conduct, testified that he and Wyatt purchased cocaine from Whitt in January 2008. He further testified that both Wyatt and Whitt are members of the Hoover Crip Gang.

Craig recounts a telephone call he made to Tay (last name unknown) from the Houston County jail at some point during the course of Walker's trial. At the time Craig called Tay, she

18

was speaking with Wyatt on her cell phone; Tay therefore carried on a simultaneous conversation with both Wyatt and Craig. The crucial information relayed to Craig during the course of the telephone conversation was that the jury was already "saying" that Walker was guilty.

Craig called Tay a number of times during his stay in the Houston County jail; one of these telephone conversations took place prior to the conclusion of Walker's trial. On the same day of his conversation with Tay and Wyatt, Craig told Walker (also then incarcerated in the Houston County jail) about the telephone conversation. He told Walker that the jury was already "saying" he was guilty.

Demetrius Wyatt also testified at the hearing on Walker's motion for new trial.[24] Wyatt testified that he has known Craig for a number of years, but does not "run around" with him. He denied involvement with the Hoover Crip Gang. Wyatt denied knowing Whitt and denied ever having been to Whitt's house. Wyatt testified that he was never involved in a three-way telephone call with Craig and Tay. While Wyatt acknowledged having heard the name "Tay," he does not know Tay and has never had a telephone conversation with her. Wyatt denied having contact with anyone regarding his jury service and/or the *Walker* case prior to and through the conclusion of trial.

The final witness at the hearing on Walker's motion for new trial was Mary Jordan, the Houston County sheriff's administrative assistant and peace officer. Jordan testified that all telephone calls placed from cells in the Houston County jail are recorded unless there is a technical

---

[24]Wyatt was juror number six in the Walker trial.

19

problem. Jordan was requested by an investigator appointed to Walker to review the recorded telephone calls from the Houston County jail for any such calls placed by Craig. In compliance with this request, Jordan listened to the recording of each telephone call for the requested time period to determine if Craig was the caller. Jordan placed all such calls on a CD and delivered the CD to the defense.[25] Because it is frequently difficult to determine the caller's name, Jordan included every call in which she could not identify the caller. No recorded call from Craig to Tay was offered into evidence at the hearing on Walker's motion for new trial.

## B. Analysis

Article 36.22 of the Texas Code of Criminal Procedure provides that "[n]o person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court." TEX. CODE CRIM. PROC. ANN. art. 36.22 (Vernon 2006). When a juror converses with an unauthorized person about the case, harm to the accused is presumed. *Hughes v. State*, 24 S.W.3d 833, 842 (Tex. Crim. App. 2000); *Quinn v. State*, 958 S.W.2d 395, 401 (Tex. Crim. App. 1997).

A trial court's ruling denying a defendant's motion for new trial is reviewed under an abuse of discretion standard. *Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001). We do not substitute our judgment for that of the trial court; rather, we are to determine whether the trial

---

[25]Inmates in the Houston County jail cannot receive telephone calls, but they are permitted to place calls if they have a calling card or if the calls are made on a collect basis. In both instances, the caller is required to identify himself or herself.

20

court's analysis was arbitrary or unreasonable. *Ford v. State*, 129 S.W.3d 541, 547 (Tex. App.—Dallas 2003, pet. ref'd). Additionally, the trial court is the trier of fact and the sole judge of the credibility of the witnesses at a hearing on motion for new trial. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995); *Escobedo v. State*, 6 S.W.3d 1, 8 (Tex. App.—San Antonio 1999, pet. ref'd). When the basis of a motion for new trial is jury misconduct, and evidence at the hearing is conflicting, there is no abuse of discretion if the trial court overrules the motion for new trial. *Tollett v. State*, 799 S.W.2d 256, 259 (Tex. Crim. App. 1990).

In the present case, the testimony conflicted as to whether any improper communications occurred, and at the conclusion of the hearing, the trial court determined that the motion for new trial should be denied. Where, as here, there is conflicting evidence as to the existence of improper communications, there is no abuse of discretion when the motion for new trial is overruled. *Id.* We overrule this point of error.

## VI. MODIFICATION OF JUDGMENT

While neither party has requested that the judgment be modified, we nevertheless choose to do so. The judgment of conviction by jury indicates that the statute for the indictable offense is Section 30.03 of the Texas Penal Code.[26] This is incorrect. The offense listed in the indictment and the offense for which Walker was tried and convicted is that of burglary of a habitation. The correct statute for this offense is Section 30.02 of the Texas Penal Code. TEX. PENAL CODE ANN.

---

[26]This section of the statute pertains to burglary of coin-operated or coin-collection machines. TEX. PENAL CODE ANN. § 30.03 (Vernon 2003).

§ 30.02.

This Court is authorized to reform the trial court's judgment so that it may speak the truth. *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *Smith v. State*, 223 S.W.3d 690, 696–97 (Tex. App.—Texarkana 2007, no pet.). Accordingly, we modify the judgment of the trial court to reflect conviction pursuant to Section 30.02 of the Texas Penal Code.

As modified, we affirm the judgment of the trial court.

Jack Carter
Justice

Date Submitted:     May 14, 2010
Date Decided:     May 27, 2010

Do Not Publish