**Michael F. ROSALES, Appellant,**

v.

**The STATE of Texas.**

**No. 73163.**

Court of Criminal Appeals of Texas, En Banc.

Oct. 13, 1999.

Rehearing Denied Nov. 24, 1999.

**230** ■

David T. Duncan, Jr., Lubbock, for appellant.

Wade Jackson, Asst. Dist. Atty., Lubbock, Matthew Paul, State's Atty., Austin, for the State.

## OPINION

McCORMICK, P.J., delivered the opinion of the Court in which MANSFIELD, KELLER, HOLLAND, WOMACK and KEASLER, JJ., joined.

The offense is capital murder and the sentence is death. Appellant raises seven points of error. We affirm.

Appellant voluntarily confessed to murdering the elderly victim in the course of a burglary of her apartment. Appellant's confession came after the police confronted him with photographs of his bloody clothing. Shortly after the murder appellant went to bed in another apartment in the apartment complex. Appellant acted suspiciously during the police crime-scene investigation. He later led police to the murder weapons—a bloody knife with a four-and-a-half-inch blade that was bent upward, a two-pronged kitchen fork with the tongs bent backward, and a bloody pair of needle-nose pliers. A forensic pathologist testified the victim died of multiple stab wounds to the head. The pathologist testified the victim suffered twenty-one stab wounds, twenty-eight incised or cut wounds, thirty-four cutaneous blunt force injury wounds, and thirty-one puncture wounds. The blood on appellant's clothing was consistent with the victim's blood. Other evidence showed appellant's shoes made two bloody shoe prints at the crime scene.

■ In his first point of error, appellant claims the evidence is legally insufficient to support his conviction. The evidence outlined above is sufficient to support the substantive elements of the offense. See *Malik v. State*, 953 S.W.2d 234, 236–40 (Tex.Cr.App.1997) (evidentiary sufficiency measured against "the elements of the offense").

■ Appellant nevertheless claims he is entitled to an appellate acquittal because the indictment alleged he killed the victim "by stabbing [her] with a knife and by striking [her] with a hard object the exact nature of which is unknown to the grand

jury," and the prosecution failed to prove the grand jury used due diligence "in determining the exact nature of an alleged 'hard object.'" See generally *Hicks v. State*, 860 S.W.2d 419, 424 (Tex.Cr.App. 1993):

> "[W]hen an indictment alleges that the manner and means of inflicting the injury is unknown and the evidence at trial does not establish the type of weapon used, a prima facie showing is made that the weapon was unknown to the grand jury. (Citation Omitted). However, if the evidence at trial shows what object was used to inflict the injury, then the State must prove that the grand jury used due diligence in attempting to ascertain the weapon used. (Citation Omitted)."

■ The prosecution satisfied the "due diligence" requirement when it proved through one of the grand jurors that the grand jury was unable to find out what object caused the various injuries. In addition, the jury was charged in the disjunctive and the evidence is sufficient to support a finding that appellant killed the victim with a knife. See *Kitchens v. State*, 823 S.W.2d 256, 258–59 (Tex.Cr.App.1991), cert.denied, 504 U.S. 958, 112 S.Ct. 2309, 119 L.Ed.2d 230 (1992) (when jury returns general guilty verdict on an indictment charging alternative theories of committing the same offense, the verdict stands if evidence supports any of the theories alleged). In addition the rule in cases like *Hicks* is no longer viable in light of our decision in *Malik*. See *Malik*, 953 S.W.2d at 239–40.

Appellant also argues the trial court erred in charging the jury in the disjunctive. We disagree. See *White v. State*, 890 S.W.2d 69, 72 (Tex.Cr.App.1994) (although indictment may allege manner and means of committing offense in the conjunctive, jury may be charged in the disjunctive and a conviction on any method alleged will be upheld if the evidence supports it). Point of error one is overruled.

In his second point of error, appellant claims he was denied the effective assistance of counsel because: 1) his counsel wasted a peremptory strike on a veniremember he should have challenged for cause, and 2) he failed to object to the trial court's charge which authorized the jury to convict appellant if he stabbed *or* struck the victim, whereas the indictment alleged he was guilty only if the State proved appellant stabbed *and* struck the victim. In light of our disposition of point of error one, the latter claim is without merit.

■ The standard for reviewing an ineffective assistance of counsel claim is set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland*, a defendant must show deficient attorney performance and prejudice. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. This requires a defendant to prove by a preponderance of the evidence that trial counsel's representation fell below an objective standard of reasonableness under prevailing professional norms (deficient attorney performance) and that this deficient performance rendered the result of the proceeding unreliable (prejudice). *Id.;* see also *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 842–43, 122 L.Ed.2d 180 (1993) (prejudice requires showing that counsel's deficient performance deprived the defendant of "a fair trial, a trial whose result is reliable"). Federal constitutional law requires appellate courts to assess prejudice from counsel's deficient performance in light of the Sixth Amendment's underlying purpose of making a reliable determination of the truth because the Sixth Amendment right to effective assistance of counsel is not recognized "for its own sake" but for the sake of making this reliable determination of the truth. *Id.*

With regard to the "wasted peremptory" ineffective assistance of counsel claim, appellant asserts that veniremember Michael Carley should have been challenged for cause because he "clearly indicated that he would improperly consider [a]ppellant's

failure to testify or put on evidence."[1] A review of the record reveals that after the parties finished questioning Carley, the State commented that the veniremember was acceptable. Defense counsel then said that they had no legal challenge for cause and exercised a peremptory challenge. After a ten minute break, during which time defense counsel apparently realized that he had meant to challenge Carley for cause, the trial judge called the parties together and allowed counsel to make his challenge. The judge thereafter denied the challenge. Because counsel did challenge the venireperson for cause, appellant's assertion that he was ineffective on this basis must fail. Point of error two is overruled.

■ In his third point of error, appellant claims he was denied due process of law under the Fifth and Fourteenth Amendments to the United States Constitution and the right to the assistance of counsel under the Sixth and Fourteenth Amendments when the trial judge denied his motion to view the crime scene with his counsel. Appellant argues the denial of his motion denied him a basic tool of his defense which would have been available were he not indigent.

The record reflects appellant filed a motion "requesting that he be allowed to accompany his attorney to the alleged crime scene to assist his attorney in the taking of measurements, photographs and otherwise assisting his attorney's investigation of the scene." Appellant and his lawyer had access to all photographs, videotapes, audio tapes, drawings, charts and diagrams made by the prosecution and the police in regard to the crime scene except for work product. The trial judge ordered the prosecution to turn over its work product to appellant if his lawyer was not allowed access to the crime scene. The prosecution also had an "open file" policy. The record is silent on who, if anyone, was living in the victim's former apartment when appellant asked to go there with his lawyer to take measurements and photographs.

Appellant primarily relies on *Ake v. Oklahoma,* 470 U.S. 68, 76, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), to support his claim. However, *Ake* does not apply here because it deals with when a trial court is constitutionally required to appoint psychiatric experts to assist the defense. *See also, Rey v. State,* 897 S.W.2d 333 (Tex.Cr.App. 1995). Moreover, on this record we fail to perceive how the trial court's denial of appellant's motion to accompany his lawyer to the crime scene prejudiced or harmed appellant. Point of error three is overruled.

■ In points of error four through seven, appellant complains the trial court erred in denying his challenges for cause to four different venirepersons. To preserve error on this issue, an appellant must demonstrate on the record that he asserted a clear and specific challenge for cause, that he used a peremptory challenge on the complained-of venireperson, that all his peremptory challenges were exhausted, that his request for additional strikes was denied, and that an objectionable juror sat on the jury. *Green v. State,* 934 S.W.2d 92, 105 (Tex.Cr.App.1996), *cert.denied,* 520 U.S. 1200, 117 S.Ct. 1561, 137 L.Ed.2d 707 (1997).

The record in the instant case shows that, after the parties accepted the eleventh juror, appellant exhausted his fifteenth peremptory challenge. Appellant then requested and received two additional challenges. After using those challenges, appellant again requested additional challenges, but the request was denied. The twelfth juror was seated shortly thereafter over appellant's objection.

■ When the trial judge errs in overruling a challenge for cause against a venireperson, the defendant is harmed only if he uses a peremptory strike to remove the venireperson and thereafter

---

1. The State claims Carley equivocated on this    issue, and the record supports this assertion.

suffers a detriment from the loss of the strike. *Demouchette v. State,* 731 S.W.2d 75, 83 (Tex.Cr.App.1986), *cert.denied,* 482 U.S. 920, 107 S.Ct. 3197, 96 L.Ed.2d 685 (1987). Because the record reflects that appellant received two extra strikes in addition to the fifteen he is granted by statute, he did not suffer the loss of two strikes. Hence, for appellant to demonstrate harm and, thus, reversible error, he must show that challenges for cause on at least *three* different veniremembers were erroneously denied. *Penry v. State,* 903 S.W.2d 715, 732 (Tex.Cr.App.), *cert.denied,* 516 U.S. 977, 116 S.Ct. 480, 133 L.Ed.2d 408 (1995); *Martinez v. State,* 763 S.W.2d 413, 425 (Tex.Cr.App.1988), *cert.denied,* 512 U.S. 1246, 114 S.Ct. 2765, 129 L.Ed.2d 879 (1994).

In his fourth point of error, appellant asserts his challenge for cause against prospective juror Manuel Mojica should have been granted because Mojica stated that he could not consider certain types of evidence to be mitigating. This Court has held on numerous occasions that an appellant is not entitled to voir dire prospective jurors on whether they could consider particular types of mitigating evidence during the capital sentencing phase. *See, e.g., Raby v. State,* 970 S.W.2d 1, 3 (Tex.Cr.App.1998), *cert. denied,* — U.S. ——, 119 S.Ct. 515, 142 L.Ed.2d 427 (1998). Furthermore, if a judge does allow such questions and a prospective juror states that he would not consider a particular type of evidence as mitigating, that prospective juror cannot be removed for cause on that basis. *Id.* Hence, the trial court properly overruled appellant's challenge to Mojica on this issue.

Appellant also asserts that Mojica was challengeable because he could not consider the full range of punishment of lesser offenses. In a criminal trial, both the defendant and the State have the right to have jurors who believe in the full range of punishment. *Johnson v. State,* 982 S.W.2d 403, 405–406 (Tex.Cr.App.1998).

"Prospective jurors 'must be able, in a sense, to conceive both of a situation in which the minimum penalty would be appropriate and of a situation in which the maximum punishment would be appropriate.' (Citation Omitted). What we meant in (citation omitted) was that prospective jurors must be able to accept that, for the offense in question, the minimum legal punishment will be appropriate in some circumstances and the maximum legal punishment will be appropriate in some circumstances. In other words, prospective jurors must be able to keep an open mind with respect to punishment until they hear the evidence in the case being tried." *Id.*

The record shows that during questioning of this venireperson by defense counsel, counsel asked Mojica if he "would have problems sitting on a jury where you're asked to consider the lesser murder, which carries a bottom [sentence] of only five years?" Mojica responded that he would not have a problem with that scenario. Shortly thereafter, defense counsel asked Mojica if he could consider giving a five-year sentence for the offense of felony murder and Mojica responded, "No, probably not." Upon questioning by the court, Mojica confirmed that he could consider the full range of punishment. Given the veniremember's answers, the trial judge did not abuse his discretion in denying appellant's challenge for cause on this issue. *Johnson,* 982 S.W.2d at 405–406. Point of error four is overruled.

In his fifth point, appellant submits prospective juror Jo Ann Womack was challengeable because she would not be able to consider certain types of evidence to be mitigating. Because appellant was not entitled to ask these types of questions, the trial court did not err in overruling appellant's challenge for cause on this basis. *See, e.g., Raby,* 970 S.W.2d at 3. Point of error five is overruled.

Because we hold the trial court did not abuse its discretion regarding two of the four complained-of challenges, appellant

cannot show harm on appeal. *Penry, supra.* Therefore, we need not address points of error six and seven pertaining to prospective jurors Hallenbeck and Farmer. *Id.*

The judgment of the trial court is affirmed.

MEYERS, J., filed concurring opinion; WOMACK, J., filed concurring opinion in which MANSFIELD and KELLER, JJ., joined; JOHNSON, J., filed concurring opinion; PRICE, J., concurs in the result.

MEYERS, J., delivered this concurring opinion.

The majority resolves point of error one by addressing the merits argued by appellant. *Majority op.* at 231 (concluding State proved "due diligence" under case law argued by appellant as controlling). Then the majority says, "in addition," there is *another* reason to overrule appellant's point of error. *Id.* (because jury charged in disjunctive, evidence is sufficient to prove victim killed with named weapon). Finally, the majority gives yet a third reason to overrule appellant's point of error. *Id.* (rule argued as controlling merits "is no longer viable" in light of *Malik*). Having resolved the issue on the merits as argued by appellant, the Court's second and third reasons for overruling the point of error are not necessary to the resolution of the case and therefore dicta. *E.g., State v. Brabson,* 976 S.W.2d 182, 186 (Tex.Crim.App.1998)(referring to dicta as "unnecessary to [the Court's] ultimate disposition of" the case).[1]

I am constrained to comment on some of the majority's dicta, however, as it will no

doubt be taken by some as having precedential value. In offering its third reason for overruling appellant's point of error, the Court disavows a rule set forth in *Hicks v. State,* 860 S.W.2d 419, 424 (Tex. Crim.App.1993), *cert. denied,* 512 U.S. 1227, 114 S.Ct. 2725, 129 L.Ed.2d 848 (1994), as no longer viable in light of recent case law. *Majority op.* at 231. The rule set forth in *Hicks* is quoted verbatim from an earlier opinion cited by appellant, *Matson v. State,* 819 S.W.2d 839 (Tex. Crim.App.1991). There, Presiding Judge McCormick, writing for a majority of the Court, set forth the rule that when an indictment alleges that the manner and means utilized to inflict the injury is unknown to the grand jury, but the evidence at trial shows what object was used to inflict injury, then the State has to prove the grand jury did not know the manner and means and used due diligence in attempting to ascertain it. *Matson,* 819 S.W.2d at 847. Presiding Judge McCormick, again writing for a majority of the Court, now disavows in a single sentence the rule he set forth in *Matson,* which represents nearly one hundred years of case law:

> In addition the rule in cases like *Hicks* [and *Matson* ] is no longer viable in light of our decision in *Malik.*

*Majority op.* at 231. No further explanation is given for the Court's sweeping disavowal of *Matson/Hicks* case law. The Court appears to assume its actions are obvious by its reference to *Malik.*

In *Malik,* the trial court erroneously included in the jury charge an instruction on the legality of the defendant's deten-

---

1. *See also Blanco v. State,* 962 S.W.2d 46, 47 (Tex.Crim.App.1998)(defending Court's decision against charge that it was dicta by saying Court's actions were "essential to determination of the case in hand"); *Brooks v. State,* 957 S.W.2d 30, 33 (Tex.Crim.App. 1997)("[d]ue to its holding that the prior conviction was an element of the offense, its alternative holding that enhancements must be alleged in the indictment could be viewed as mere dicta"); *Angel v. State,* 740 S.W.2d 727, 736 (Tex.Crim.App.1987)(McCormick, J., concurring and dissenting)(referring to Section III of majority opinion as "totally unnecessary to the resolution of the instant case" and "an advisory opinion" and stating that since "[t]he merits of appellant's petition can be disposed of without an inquiry as to [the issue addressed in Section III], ... all of the language in Section III of the majority opinion is pure dicta and totally advisory").

tion, a matter which was neither alleged in the indictment nor which the State was required to prove in establishing the elements of the crime charged. Overruling former case law in which we measured sufficiency of the evidence by the jury charge actually given, we held that sufficiency of the evidence would thereafter be measured by a "hypothetically correct jury charge":

> Hence, sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.

*Malik*, 953 S.W.2d at 240. We emphasized that this new standard would ensure that judgments of acquittal would be reserved for situations "in which there is an actual failure in the State's proof of the crime rather than a mere error in the jury charge submitted." *Id.*

The *Matson/Hicks* line of cases do not deal with "mere error in the jury charge submitted." They do not deal with error in the jury charge at all. These cases address the State's *proof of allegations made in the indictment.* They stand for the proposition that when the State alleges in the indictment that the manner and means of the commission of the crime was unknown to the grand jury, there must be proof to support this allegation at trial—[2] just as there must be proof of any element or fact of consequence alleged in the indictment. Because these cases address a failure in the State's proof of allegations made in the indictment, the reason behind the Court's declaration that they are not viable in light of *Malik*, which had nothing to do with facts of consequence alleged in the indictment, is not exactly crystal clear. Perhaps the Court views manner and means when alleged in the indictment to be unknown to the grand jury, as something that either should not be in the indictment or, if it is alleged in the indictment, should for some reason not be included in a hypothetically correct charge.[3] Perhaps the Court means that a charge on manner and means unknown would not be "authorized by the indictment," even though alleged in the indictment, or such

2. When the indictment alleges manner and means unknown and the proof at trial is inconclusive as to the manner and means, a prima facie showing is made that the manner and means was unknown to the grand jury. But when the evidence at trial establishes the manner and means, the State has to prove the grand jury used due diligence in attempting to ascertain manner and means. The reasoning is that a fact of consequence cannot be said to have been unknown to the grand jury unless they used due diligence it ascertaining it.

Other facts of consequence are sometimes pled as unknown to the grand jury, and subject to a similar rule and reasoning. *Matson* relied on *Cunningham v. State*, 484 S.W.2d 906 (Tex.Crim.App.1972). In that case, the indictment alleged the person from whom the defendant received stolen property was unknown to the grand jury. The rule was explained:

> [A] fatal variance results where the indictment alleges that the person from whom the defendant received the stolen property is unknown to the grand jury and proof at

trial shows that the grand jury did in fact know the name of such person or could have ascertained it by reasonable diligence. [citations omitted] However, where nothing is developed at trial to suggest that investigation by the grand jury could have ascertained from whom a defendant received the stolen property, there is a prima facie showing that the name of the party from whom the defendant received the property was unknown to the grand jury, thereby supporting such averment in the indictment.

*Cunningham*, 484 S.W.2d at 911; *see also Manley v. State*, 138 Tex.Crim. 379, 136 S.W.2d 613 (1940); *Hunnicutt v. State*, 131 Tex.Crim. 260, 97 S.W.2d 957 (1936); *Williams v. State*, 69 Tex.Crim. 163, 153 S.W. 1136 (1913).

3. By extending *Malik* to the context presented in this case, the majority appears to have created a "hypothetically correct indictment" doctrine.

allegation should not be included in "the State's proof of the crime[,]" even though alleged in the indictment.[4]

At any rate, all of this is inconsequential to this case because the *Matson/Hicks* line of cases need not even apply here for the second reason the Court gives in support of overruling appellant's point of error. Alternative manner and means are alleged in the indictment—a manner and means known (knife) and unknown (hard object the exact nature of which was unknown to grand jury). In these circumstances the manner and means unknown is not necessary to proving appellant's guilt since the State could prove either the known or unknown manner and means. *See Lawton v. State,* 913 S.W.2d 542, 551 (Tex.Crim. App.1995)(State is allowed to plead alternative theories of manner and means in conjunctive and proof under one theory will suffice for conviction), *cert. denied,* 519 U.S. 826, 117 S.Ct. 88, 136 L.Ed.2d 44 (1996); *Scott v. State,* 732 S.W.2d 354, 360 (Tex.Crim.App.1987)(where indictment alleged alternative theories, manner and means unknown and a named manner and means, proof of either means was sufficient). But the case law the majority now says is defunct did not address alternative pleadings. Thus, the majority's disavowal of the *Hicks/Matson* rule in the context of the instant case is essentially dicta upon dicta. That is, the disavowing of the rule is offered as an *alternative* holding (which renders it dicta), and the facts presented in the instant case render the rule inapplicable anyway (also rendering it dicta).

Appellant's first point of error should be overruled for the second reason stated by the majority. With these comments, I concur in the judgment.

WOMACK, J., filed a concurring opinion in which MANSFIELD and KELLER, JJ., joined.

I join the opinion of the Court.

Today we broach the issue of reconsidering our treatment of the allegation in the indictment that the offense was committed by means "unknown to the grand jury." *See ante* at 231. Our past requirement that this allegation be proved at trial is not justified. The only substantial rights of the defendant that could be denied by such an allegation are the rights to indictment by a grand jury in a felony case [1] and to notice of the nature and cause of the accusation.[2] These are requirements for the State's pleading, which are appropriately raised and decided before trial.[3] The remedy for the grand jury's lack of diligence in discovering and alleging the means of committing the offense would be to sustain an exception to the indictment. The notion that this allegation creates an issue of fact to be proved to the trial jury is close to bizarre.

JOHNSON, J., filed a concurring opinion.

I concur in the first three points of error and otherwise join the majority opinion.

In point of error one, appellant alleges that the evidence was legally insufficient to prove each and every element of the offense beyond a reasonable doubt. Specifically, he complains that the state was obligated to prove that the victim was struck

---

4. Judge Womack views the requirement that an indictment allegation be proved at trial as "close to bizarre." *Concurring op.* at 230. If anything is bizarre, it is that the State continues to allege in the indictment that the manner and means were unknown. Certainly *Matson/Hicks* do not require such pleading.

1. TEX. CONST. art. I, § 10.

2. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10.

3. *See* TEX.CODE CRIM. PROC. arts. 1.14(b) (objection to indictment must be raised before date of trial or right to object is waived and forfeited), 28.01, § 1(4) (pre-trial hearing shall be to determine exceptions to indictment), 28.01, § 2 (preliminary matters not raised seven days before pre-trial hearing will not thereafter be allowed, except for good cause shown), 28.03 (testimony may be obtained on matters involved in written pleadings).

"with a hard object the exact nature of which is unknown to the grand jury" as alleged in the indictment. He asserts that the state failed in its proof because it failed to show the grand jury used due diligence in attempting to ascertain the nature of the object in question.

In *Matson v. State,* 819 S.W.2d 839, 847 (Tex.Crim.App.1991), we stated that:

> When an indictment alleges that the manner or means utilized to inflict an injury is unknown and the evidence at trial does not show what type of object was used, a prima facie showing exists that the object was unknown to the grand jury. [Citations omitted.] If, however, evidence at trial shows what object was used to inflict the injury, an issue is raised with respect to whether the grand jury had information, when it handed down the indictment, as to the object used. [Citation omitted.] Only in such a case, must the State prove that the grand jury did not know the manner or means of inflicting injury and that the grand jury used due diligence in its attempts to ascertain the manner or means.

*See also McFarland* v. *State,* 845 S.W.2d 824, 830–31 (Tex.Crim.App.1992), *cert. denied,* 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993). Appellant points to evidence in the record which he contends shows that the "blunt object" was a pair of pliers. The testimony appellant refers to, however, merely concerns officers' recovery of several items used in the crime. That pliers were among the items used does not necessarily mean they were the item used to inflict the blunt force injuries. Given nothing more, the state was not required under *Matson* to prove that the grand jury did not know the manner or means of inflicting the injury or whether it used due diligence in its attempts to ascertain the manner or means. Nevertheless, the state did put one of the grand jurors on the stand to testify generally that the grand jury was unable to find out what object caused the blunt force injuries.

Appellant also asserts under this point that the evidence was insufficient because the indictment alleges that appellant committed capital murder "by stabbing ... FELDER with a knife *and* by striking [her] with a hard object ...," (emphasis added) whereas the charge allowed conviction for stabbing Felder *or* striking her with an object. Appellant asserts that the disjunctive language in the charge thereby lowered the state's burden of proof.

We have held on numerous occasions that, although an indictment may allege differing methods of committing capital murder in the conjunctive, it is proper for the jury to be charged in the disjunctive and a conviction on any method alleged will be upheld if it is supported by the evidence. *White v. State,* 890 S.W.2d 69, 72 (Tex.Crim.App.1994); *Kitchens v. State,* 823 S.W.2d 256, 258 (Tex.Crim.App.1991), *cert. denied,* 504 U.S. 958, 112 S.Ct. 2309, 119 L.Ed.2d 230 (1992). A review of the evidence in the light most favorable to the verdict indicates that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Therefore, I concur in the judgment as to point of error one.

In point of error two, appellant claims that he was denied the effective assistance of counsel because his counsel wasted a peremptory strike on a veniremember he should have challenged for cause, and because he failed to object to the trial court's charge which authorized the jury to convict appellant if he stabbed *or* struck the victim, whereas the indictment alleged he was guilty only if the state proved appellant stabbed *and* struck the victim.

Under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (adopted by this Court in *Hernandez v. State,* 726 S.W.2d 53 (Tex.Crim.App. 1986)), in order to prove ineffective assistance of counsel, an appellant must first demonstrate that his trial counsel's perfor-

mance was deficient. Secondly, he must show that his counsel's deficient performance was so serious that it prejudiced his defense, rendering the trial unfair and the verdict suspect. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. In other words, appellant must prove that trial counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and that this deficient performance rendered the result of the proceeding unreliable. *Id.* at 687–88 104 S.Ct. at 2064. There is a strong presumption that counsel's actions fell within the wide range of reasonable professional assistance. *Id.* at 689, 104 S.Ct. at 2065.

With regard to the "wasted peremptory," appellant asserts that veniremember Michael Carley should have been challenged for cause because he "clearly indicated that he would improperly consider [a]ppellant's failure to testify or put on evidence." A review of the record reveals that after the parties finished questioning Carley, the state commented that the veniremember was acceptable. Defense counsel then said that they had no legal challenge for cause and exercised a peremptory challenge. After a ten-minute break, during which time defense counsel apparently realized that he had meant to challenge Carley for cause, the trial judge called the parties together and allowed counsel to make his challenge. The judge thereafter denied the challenge. Because counsel did challenge the venireperson for cause, appellant's assertion that he was ineffective on this basis fails.

For the reasons discussed above as to point of error one, appellant has also failed to show deficient performance of counsel for failing to object to the disjunctive wording in the jury charge. Based on the foregoing, I concur in the judgment as to point of error two.

In point of error three, appellant claims that he was denied due process of law under the Fifth and Fourteenth Amendments to the United States Constitution and the right to the assistance of counsel under the Sixth and Fourteenth Amendments when the trial judge denied his motion to view the scene of the offense with his counsel.[1] Appellant argues that the denial of his motion denied him a basic tool of his defense which would have been available were he not indigent. Appellant cites to *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), to support his claim.

The defendant in *Ake* requested the appointment of a psychiatrist to assist the defense on the issue of his sanity at the time of the offense. The Supreme Court explained that due process requires access to the raw materials integral to the building of an effective defense. *Id.* at 77, 105 S.Ct. at 1093. The Court held that, while the state need not "purchase for an indigent defendant all the assistance that his wealthier counterparts might buy," it must provide him the basic tools to present his defense within our adversarial system. *Id.* The Court set forth the following three factors as relevant considerations in determining what constitutes a "basic tool" and under what conditions the state is required to provide an indigent defendant with access to the tool:

> The first is the private interest that will be affected by the action of the State. The second is the governmental interest that will be affected if the safeguard is to be provided. The third is the probable value of the additional or substitute procedural safeguards that are sought, and the risk of an erroneous deprivation of the affected interest if those safeguards are not provided.

*Id.* In the context of providing expert psychiatric assistance, the Supreme Court de-

---

1. Appellant also claims that he was deprived of his rights to due course of law and the assistance of counsel "under the Constitution and laws of the State of Texas" by the denial of his motion. However, appellant fails to brief his state law claims. Therefore, I do not address them.

voted only a paragraph to each of the first two factors. The Court stated that an individual's interest in the accuracy of a proceeding where his life or liberty is at stake is "obvious and weighs heavily" in the analysis. *Id.* at 78, 105 S.Ct. at 1093. Given that the state also maintains an interest in the legitimacy of the verdict, the only interest the Supreme Court could identify that weighs against an accused's interest in an accurate outcome is the state's concern for judicial economy. *Id.* at 78–79, 105 S.Ct. at 1093–94. The Court concluded that the state's interest in judicial economy was "not substantial, in light of the compelling interest of both the State and the individual in accurate dispositions." *Id.* at 79, 105 S.Ct. at 1094.

The Supreme Court placed the greatest emphasis on the third factor, discussing the importance of psychiatric testimony in conveying to the factfinder an understanding of the defendant's mental state and its potential impact on his behavior at the time of the crime. *Id.* at 79–82, 105 S.Ct. at 1094–96. The Court concluded that the risk of an inaccurate verdict was high where the defendant was not assisted by a psychiatrist to "help determine whether the insanity defense is viable, to present testimony, and to assist in preparing the cross-examination of a State's psychiatric witnesses." *Id.* at 82, 105 S.Ct. at 1096. The *Ake* Court further stated that where it is clear that the defendant's sanity is likely to be a significant factor, "a defense may be devastated by the absence of a psychiatric examination and testimony; with such assistance, the defendant might have a reasonable chance of success." *Id.* at 82–83, 105 S.Ct. at 1096. In *Rey v. State,* 897 S.W.2d 333 (Tex.Crim.App.1995), we extended the *Ake* analysis to include non-psychiatric experts.

Unlike the defendants in *Ake* and *Rey,* appellant in the instant case did not seek the appointment of an expert (*e.g.,* a crime scene or forensic expert); nevertheless, his request can still be reviewed within the framework of the *Ake* decision. As dis-

cussed above, the defendant's and the state's interests must be factored into the analysis in each case. In this case, as in *Ake,* appellant, charged with capital murder, has an interest in the accuracy of the proceedings and that interest "is obvious and weighs heavily" in the analysis. The state likewise maintains an interest in the accuracy of the result, although this case also presents a heavy interest on the state's part in maintaining public safety and keeping appellant in custody. However, given the weight of appellant's interest in an accurate result and the fact that he could be constantly guarded during his time at the crime scene, appellant's interest weighs somewhat more heavily than the state's.

Addressing the third and most important consideration in the analysis, the *Ake* Court held that a defendant must make a preliminary showing that his sanity was "likely to be a significant factor" at trial. *Id.* at 74, 82–83, 86, 105 S.Ct. at 1091–1092, 1096, 1098. In *Caldwell v. Mississippi,* 472 U.S. 320, 323 n. 1, 105 S.Ct. 2633, 2637 n. 1, 86 L.Ed.2d 231 (1985), the Supreme Court declined to entertain a petitioner's *Ake* claim where he "offered little more than undeveloped assertions that the requested assistance would be beneficial." *See also Rey,* 897 S.W.2d at 339. Here, appellant simply asserts that his presence at the crime scene might give his counsel unique insight into how events actually transpired. He presents no evidence of special expertise in crime scene analysis or knowledge of any subject which would be helpful in the development of a defensive theory. Furthermore, it is probable that any special insight he may have of the crime could be communicated to his counsel just as effectively through discussions and reviews of scene photographs and diagrams. Indeed, any communication appellant had with his counsel at the crime scene would probably not be *confidential,* as the demands of public safety would require an agent of the state be constantly nearby.

Without more, appellant has failed to make a sufficient showing that his presence at the crime scene was a "basic tool" to which he was entitled under *Ake*. The judge did not err in overruling appellant's motion, and this ruling did not deprive appellant of due process and the assistance of counsel.

Based on the foregoing, I concur in the judgment as to point of error three.