In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00231-CR

                                                ______________________________

 

 

    RICKEY ALFRED WALKER, A/K/A RICKEY WALKER, JR.,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 349th
Judicial District Court

                                                           Houston County, Texas

                                                        Trial Court
No. 09-CR-073

 

                                                                                                   

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                      MEMORANDUM OPINION

 

            A Houston
County jury found Rickey Alfred Walker, a/k/a Rickey Walker, Jr., guilty of
burglary of a habitation with the use of a deadly weapon and assessed
punishment at fifty years’ imprisonment in the Texas Department of Criminal
Justice–Institutional Division.[1]   Walker appeals,[2]
claiming (1) the evidence is legally and factually insufficient to support the
verdict; (2) the trial court erred in denying a requested jury instruction on
self-defense; and (3) the trial court erred in denying his motion for new trial
predicated on juror misconduct.  We
affirm the judgment of the trial court.

I.          BACKGROUND

 

            In the early morning hours of
November 22, 2008, Walker, dressed entirely in black and wearing gloves,
visited the home of his lifelong friend, Jason Whitt.[3]  Walker knocked on the door and asked Whitt
for thirty dollars.  When Whitt indicated
that he did not have thirty dollars, Walker pulled a gun from his pocket and
shot Whitt.[4]  When Whitt fell to the floor, Walker stepped
past him and entered the home.[5]  Whitt attempted to pull himself to the
kitchen table, but upon doing so was attacked by Walker with a knife.[6]  Walker then began to look around the house
while speaking incomprehensibly.[7]  As Whitt began to drag himself to the
telephone next to the bed, Walker again approached him, still carrying the
gun.  At that point, Whitt bit Walker’s
hand and Walker fell back, dropped the gun, and ran out the door.  Whitt grabbed the gun and tried to use it,
but it failed to fire.  He does not know
how the gun ended up under the couch and has no idea why Walker shot him.[8]     

             Fortuitously, “Bobby”[9]
arrived at the Whitt home shortly after Walker departed, and upon discovering
Whitt’s injured and bloody body, immediately called 9-1-1.  Whitt then called his wife and told her to
come quick, because he had been shot.  He
also called his cousin and nearby neighbor, James Tubbs.  Tubbs was on the scene attempting to help
Whitt when Latechia arrived.  Tubbs
observed blood on the threshold of the doorway and on the floor in the
kitchen.  Tubbs also observed a small
gray vehicle parked in the driveway, which appeared to be the vehicle Walker
usually drove.  When the emergency
medical service arrived, Tubbs returned home. 


            After months
of medical treatment, Whitt was released from the hospital, but must now walk
with the aid of crutches. 

II.        SUFFICIENCY OF THE EVIDENCE

 

            We review the legal and factual
sufficiency of the evidence supporting a conviction under well-established
standards.  In conducting a legal
sufficiency review, we consider the evidence in the light most favorable to the
verdict to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Laster v. State, 275 S.W.3d 512, 517
(Tex. Crim. App. 2009).  We must give
deference to “the responsibility of the trier of fact to fairly resolve
conflicts in testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts.” 
Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson
v. Virginia, 443 U.S. 307, 318–19 (1979)).  We are not required to determine whether we
believe that the evidence at trial established guilt beyond a reasonable doubt;
rather, when faced with conflicting evidence, we must presume that the trier of
fact resolved any such conflict in favor of the prosecution, and we must defer
to that resolution.  State v. Turro,
867 S.W.2d 43, 47 (Tex. Crim. App. 1993). 
In conducting a factual sufficiency review, we consider the evidence in
a neutral light.  Watson v. State,
204 S.W.3d 404, 414–15 (Tex. Crim. App. 2006). 

            We may find evidence factually
insufficient in two ways:  (1) the
evidence supporting the conviction is “too weak” to support the fact-finder’s
verdict, or (2) considering conflicting evidence, the fact-finder’s verdict is
against the great weight and preponderance of the evidence. Laster, 275
S.W.3d at 518.  In so doing, we may find
the evidence insufficient when necessary to prevent manifest injustice.  Id. 
Although we give less deference to the verdict in a factual sufficiency
review, we will not override the verdict simply because we disagree with
it.  Id.  Both legal and factual sufficiency are
measured by the elements of the offense as defined by a hypothetically correct
jury charge.  Malik v. State, 953
S.W.2d 234, 240 (Tex. Crim. App. 1997); see also Grotti v. State, 273
S.W.3d 273, 280 (Tex. Crim. App. 2008).

            Walker contends this is not the
story of an aggravated burglary; rather, it is the story of a drug deal gone
awry.  He claims the evidence is
insufficient to support a rational trier of fact’s conclusion of specific
intent to unlawfully enter Whitt’s home to commit aggravated assault.  Instead, Walker maintains the evidence shows
that Whitt was the initial aggressor, a struggle ensued, and Whitt was
shot.  In its best light, Walker claims
the State’s evidence only proves that Walker shot Whitt prior to entering the
premises and that such entry was not necessarily without consent.  He points out that there is no evidence that
he was in possession of the gun in question subsequent to the shooting, while
there is evidence that the gun belonged to Whitt and was hidden to avoid
detection and criminal charges.  We
examine the crucial evidence in light of these complaints.

            A.        Testimony of Jason Whitt

 

            Whitt has known Walker since the time he
started school in Grapeland.  The two
were classmates and have been friends since their school days.  There were no problems between the two
friends prior to this incident.  Walker
visited Whitt’s home fairly frequently, and was welcome to do so.  

             Walker paid Whitt a visit on the evening of
November 21, while Whitt was clearing off some land next to his house.  In the early morning hours of November 22,
after Whitt had retired for the evening, Walker returned.  An external security camera was installed at
Whitt’s front door,[10]
so he knew Walker to be his visitor. 
When Whitt answered the door, Walker asked if he could leave his car in
Whitt’s yard and asked Whitt to hold onto the keys, which were placed on the
table inside the house.[11]  Whitt does not recall other topics the two
might have discussed, but there was no argument.  

             When Walker returned to Whitt’s home at
approximately 6:00 a.m., he was dressed in black and wearing gloves.  Walker and Whitt were talking through a partially
opened door, and Walker demanded money. 
When Whitt refused, Walker pulled a gun from his pocket and shot
Whitt.  Walker then inflicted slashing
injuries upon Whitt with a knife, and looked through the house.  As Whitt made his way toward the telephone,
Walker approached him and Whitt bit Walker’s hand, whereupon Walker dropped the
gun and fled the premises.  At no point
did Whitt invite Walker into his house that morning; Walker made his way into
the house only after he shot Whitt. 
Whitt did not see Walker take anything from his home except Walker’s own
car keys, which were on the kitchen table. 


            Whitt never discussed the gun with Betsill
and never told Betsill the gun belonged to Whitt.  

            B.        The Testimony of James Tubbs

 

            Tubbs[12]
received a telephone call from Whitt at approximately 7:45 a.m. on November 22,
in which Whitt indicated that he was hurt. 
When Tubbs arrived at Whitt’s home, a person unknown to Tubbs was
already there, and had called 9-1-1. 
There were a number of onlookers present, and Tubbs did not see a gun
inside or outside of the house.  There
was a small gray vehicle in Whitt’s driveway, which looked like the vehicle
Walker usually drove.  

            C.        The Testimony of Justin Lumbreraz and
Susan Rowden

 

            Lumbreraz and Rowden are emergency medical
technicians (EMTs) who rendered medical care to Whitt and transported him by
ambulance to the hospital.  When the EMTs
moved the couch to treat Whitt, a small, semiautomatic handgun was located
under the couch.  Rowden brought a deputy
into the house and showed him the gun. 
When Lumbreraz and Rowden left with Whitt, the gun was still inside the
house. 

            There was blood in the
living room and on the porch, with a large puddle of blood just inside the
front door and another large puddle of blood in the middle of the kitchen
floor.  Whitt was conscious, talking and
saying that he had been shot.  The
gunshot wound was under the right breast area. 
The bullet remains lodged in the lower lumbar spine area.  

            D.        The Testimony of Roger Dickey

 

            Dickey is a county commissioner for Houston
County, but at the time of this occurrence (in November 2008), he was the chief
of police for the City of Grapeland. 
Dickey arrived at the crime scene along with the emergency medical
service.  He was not made aware of the
fact that there was a gun inside the residence, and when he and other law
enforcement searched for Walker, the premises were left unsecured.  

            While photographing the scene,
Dickey located a shell casing on the front porch and a second shell casing in
the kitchen.  He located a small knife on
the front porch next to the door and noticed a pool of blood on the kitchen
floor.  After transporting evidence from
the scene to his office, Dickey realized there was a missing gun.  Tubbs was questioned about it and denied any
knowledge of the gun.  The gun was
recovered on the following Tuesday, when an anonymous caller indicated it was
located in the barbeque pit on the porch of the Whitt home.  The gun was not dusted for fingerprints, but
was identified as the gun used in Whitt’s shooting.  

            According to Dickey, drug houses
share certain common features; an exterior camera is one of those
features.  The Whitt house was affixed
with an exterior camera which enabled one viewing a television screen inside
the house to determine the identity of a person at the front door.  Black plastic covering on the windows of a
house, like the Whitt house, is also consistent with drug activity.  While Dickey had received allegations in the
past regarding drug activity surrounding Whitt and his residence, he was never
able to make a case on Whitt for any kind of drug activity.  When Dickey searched the Whitt residence for
the missing bullet,[13]
he did not locate any drugs or drug paraphernalia, nor did he find anything in
the house that would indicate drug activity was taking place there.  

            E.        The Testimony of Bobby Betsill

 

            On the morning of November 22, Betsill was
in search of a co-employee who failed to show up for work at a construction job.  He thought this individual might be at Whitt’s
house, so Betsill decided to check there.  Upon his arrival, Betsill noticed a gray car
in the driveway.  A young lady by the
name of Marsheal Kennedy was standing outside by the car.  When Betsill knocked on the door, Whitt told
him to come in, that he “ha[d] been jacked.” 
After Betsill called 9-1-1, he asked Whitt whose gun was in the house;
Whitt said it belonged to him.  Betsill,
who admitted to being under the influence of drugs at the time he arrived at
Whitt’s house, left before the EMTs arrived. 
Even though he was under the influence, Betsill maintained that his
memory of the events of November 22 was not affected.[14]  

            F.         The
Testimony of Marsheal Kennedy and Johnny Pierson

 

            Kennedy has
known both Whitt and Walker for over ten years. 
In November 2008, she was Walker’s girlfriend.[15]  Kennedy identified the firearm used in the
shooting, and testified that she stole the gun from her aunt, Pierson.  Kennedy acquired the gun several weeks before
the shooting and sold the gun to Whitt two or three days after having taken it
from Pierson’s residence.  Kennedy admits
she relayed a different version of events to the district attorney’s office,
stating that she sold the gun to someone outside a club.[16]  

            Pierson filed a police report after
Kennedy stole her gun.  She also gave a
statement to the police on November 22, 2008, regarding the theft of the gun,
the day after it was stolen.  She claims
the gun was therefore stolen the day before the shooting, on November 21.

III.       THE
EVIDENCE IS LEGALLY AND FACTUALLY SUFFICIENT TO SUPPORT         THE VERDICT

 

             Walker complains that the evidence, even when
viewed in the light most favorable to the verdict, does not prove beyond a
reasonable doubt that he entered Whitt’s home with the intent to commit an
aggravated assault.  In support of this
proposition, Walker relies on Langs v. State, 183 S.W.3d 680 (Tex. Crim.
App. 2006).  While Langs centers
on the issue of double jeopardy, it recognizes that “[a] person charged with
burglary under Section 30.02(a)(1)[17]
is guilty of that offense the moment that he crosses the threshold of a
habitation without consent and with intent to commit the underlying felony.”  Id. at 686.  

            In this case, the jury
was instructed not only on burglary as defined under Section 30.02(a)(1) of the
Texas Penal Code (entry with intent to commit aggravated assault), but also as
defined under Section 30.02(a)(3) of the Texas Penal Code (entry and the
commission—or attempted commission—of aggravated assault).  Tex.
Penal Code Ann. § 30.02(a)(1), (3) (Vernon 2003).  Although an indictment may allege different
methods of committing an offense in the conjunctive, it is proper for the jury
to be charged in the disjunctive.  See
Kitchens v. State, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991).  The State may plead alternative theories of
an offense that the evidence may ultimately prove.  Rosales v. State, 4 S.W.3d 228, 236
(Tex. Crim. App. 1999).  The State is
allowed to plead in the conjunctive if proof of any one theory of the offense
will support a guilty verdict.  Id.  When, as here, the State pleads in the
alternative, it is not required to prove guilt under all of the theories
alleged.  If the State establishes proof
of guilt under one theory, the conviction will stand against a challenge to the
sufficiency of the evidence.  Id.;
see also Brooks v. State, 990 S.W.2d 278, 283 (Tex. Crim. App. 1999) (en
banc) (“When a jury returns a general guilty verdict on an indictment charging
alternative theories of the same offense, the verdict stands if the evidence
supports any of the theories charged.”).

            Under Section 30.02(a)(3) as the
applicable statute, the hypothetically correct charge would require the jury to
find, beyond a reasonable doubt, that Walker, on or about November 22, 2008, (1)
intentionally or knowingly entered a habitation, (2) without the effective
consent of Whitt, the owner thereof, and (3) attempted to commit or committed
the felony offense of aggravated assault.[18]
 When the prosecution is based on the
commission of an assault, the assault supplants the need to prove specific
intent accompanying the entry.  DeVaughn
v. State, 749 S.W.2d 62, 65 (Tex. Crim. App. 1988).

            After considering all of the
evidence cited above, we conclude the evidence is legally and factually
sufficient to prove Walker entered Whitt’s home without permission and
committed the crime of aggravated assault in accordance with Section
30.02(a)(3) of the Texas Penal Code;[19]  therefore, we need not address the issue of
whether Walker gained unauthorized entry into Whitt’s home with the intent to
commit aggravated assault.  See Brooks,
990 S.W.2d at 283.

            Walker claims the evidence supports
his theory that Whitt, who was angry with Walker over a drug deal, was actually
the aggressor.  Much of this argument is
based upon inference.  Walker points to
the issue of gun ownership and its disappearance.  Kennedy testified she sold the gun to Whitt,
and Betsill testified that Whitt told him—while Whitt was in severe pain from a
gunshot wound and knife injuries—that the gun was his.[20]
 The gun was located at the scene of the
crime and mysteriously disappeared only to reappear a few days later.  Walker contends this evidences ownership by
Whitt, who, if found in possession of a firearm, would have been in violation
of his parole.  Further, Walker contends
the evidence shows that Whitt is a drug dealer, with a camera fixed at the
entrance to his home and black plastic covering the windows.  Walker owed Whitt money, and it is alleged
Walker’s car and the car keys were left in Whitt’s possession as security.  

            A reviewing court conducting a
factual sufficiency analysis necessarily considers any reasonable alternative
hypothesis raised by the evidence.  The
very nature of a factual sufficiency review requires the court to consider all
of the evidence presented at trial and not just that which is favorable to the
verdict.  See Cain v. State, 958
S.W.2d 404, 408 (Tex. Crim. App. 1997). 
However, the mere existence of an alternative reasonable hypothesis does
not render the evidence factually insufficient. 
Even when an alternative reasonable hypothesis is raised by the
evidence, the standard of review remains the same.  A verdict may be overturned only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust.  See Clewis v. State, 922
S.W.2d 126, 129 (Tex. Crim. App. 1996).  


            The factors listed above, along with
certain evidence which indicates that the bullet entered Whitt’s body below the
right chest and lodged in the lower back, could be indicative of a struggle
between the two men over a gun already in Whitt’s possession.  However, there is evidence in the record
which counters this theory:  (1) upon a
search of Whitt’s home, there was no evidence that would indicate drug activity
was taking place there; (2) Whitt denied ownership of the gun; (3) there
was evidence allowing the jury to question the testimony of Kennedy, who
testified she sold the gun to Whitt, given her recent fabrication to the
district attorney’s office as well as her relationship with Walker;[21]
(4) likewise, the jury could have determined that Betsill, who testified Whitt
told him the gun belonged to him, also had some credibility issues,[22]
and he admitted to being under the influence of drugs while the conversation
with Whitt was taking place; (5) the large areas of blood by the kitchen table
and by the couch support Whitt’s rendition of the events of November 22; (6)
money was missing from Whitt’s home; (7) Whitt testified that he did not invite
Walker into his home and entry was made into the home after Whitt was shot; and
(8) there is no testimony that Whitt instructed or requested anyone to hide the
gun.  We are to give proper deference to
the role of the jury which considered all of this evidence and by its verdict
resolved the conflicts against Walker.  Jones
v. State, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996).

            Upon objective review of the record,
we cannot say that the evidence is so weak that the finding is clearly wrong
and manifestly unjust.  We further do not
find the verdict to be against the great weight and preponderance of the
conflicting evidence.  We therefore
conclude that the evidence is not only legally sufficient, it is also factually
sufficient to support the verdict of guilt.

IV.       THE TRIAL COURT DID NOT ERR IN DENYING
WALKER’S REQUEST FOR A JURY INSTRUCTION ON SELF-DEFENSE                                                                                       

 

            During the charge conference at the
guilt/innocence phase, Walker requested a self-defense instruction, which the
trial court denied.  Walker contends the
trial court erred by denying his request for such an instruction.  Walker’s theory here is the same—Whitt
initiated the aggression, by use and threat of a gun, and was shot when Walker
acted to defend himself.  

            A defendant is
entitled to an instruction on self-defense if the issue is raised by the
evidence, whether that evidence is strong or weak, regardless of what the trial
court may think about the credibility of the defense.  Ferrel
v. State, 55 S.W.3d 586, 591
(Tex. Crim. App. 2001); Granger v. State,
3 S.W.3d 36, 38 (Tex. Crim. App. 1999).  
Before a defendant is entitled to a self-defense instruction, however,
there must be some evidence, when viewed in the light most favorable to the
defendant, that will support the claim.  Ferrel, 55 S.W.3d at 591; Hill v. State, 99 S.W.3d 248, 250 (Tex.
App.—Fort Worth 2003, pet. ref’d).  Thus,
entitlement to a self-defense instruction is predicated on the provision of
some evidence that the defendant was authorized to utilize force against
another.  “[A] defense is supported (or
raised) by the evidence if there is some evidence, from any source, on each
element of the defense that, if believed by the jury, would support a rational
inference that that element is true.”  Shaw v. State, 243 S.W.3d 647, 657–58
(Tex. Crim. App. 2007).  A defendant need
not testify in order to raise a defense. 
Boget v. State, 40 S.W.3d 624,
626 (Tex. App.—San Antonio), aff’d,
74 S.W.3d 23, 31 (Tex. Crim. App. 2001). 
Defensive issues may be raised by the testimony of any witness, even
those called by the State.  Jackson v. State, 110 S.W.3d 626, 631
(Tex. App.—Houston [14th Dist.] 2003, pet. ref’d).  When reviewing a trial court’s decision to
deny a requested defensive instruction, “we view the evidence in the light most
favorable to the defendant’s requested submission.”  Bufkin
v. State, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006).   However, “if the evidence, viewed in the light
most favorable to the defendant, does not establish self-defense, the defendant
is not entitled to an instruction on the issue.” Ferrel, 55 S.W.3d at 591.  

            Walker
argues that there was evidence presented that he acted in self-defense and,
therefore, the trial court should have included a self-defense instruction in
the charge.  He directs our attention to
the following evidence:  (1) Whitt’s
cross-examination; (2) the testimony of Latechia regarding Whitt’s possession
of weapons; (3) the location of the shell casings as being inconsistent with
Whitt’s version of events; (4) Kennedy’s testimony regarding the reason Whitt
may have had some issues with Walker beyond the financial aspects of their drug
transactions; and (5) Betsill’s testimony that Whitt owned the gun, as
acknowledged to Betsill by Whitt.  

            There is
some evidence that Whitt had owned guns in the past, but he denied ownership of
the gun in question.  While both Kennedy
and Betsill testified that Whitt owned the gun, Whitt denied this and emphatically
stated that there were no guns in his house. 
Kennedy’s testimony failed to provide any insight into potential discord
between Walker and Whitt, and the evidence regarding the location of the two
shell casings is inconsequential.  Whitt
testified that Walker fired twice, but only one bullet hit him.  One shell casing was found on the porch,
where Walker was standing when he fired the gun, and the second casing was
found in the living room—the bullet having missed Whitt.  

            Likewise, Latechia’s
testimony that Whitt possessed firearms in the year before the shooting is not
probative of the issue of Walker’s immediate need to use deadly force against
Whitt on the morning of November 22. 
Even if the gun belonged to Whitt, as Kennedy and Betsill testified,
there is no evidence that Whitt in any way threatened Walker with the gun or
caused Walker to believe that force, much less deadly force, was immediately
necessary to defend himself.[23]  

            Moreover,
self-defense is a justification for one’s actions and necessarily requires an
admission that the alleged conduct occurred. 
“[T]o rely on ‘self-defense,’ the defendant must first admit,” or “substantially
admit,” “committing the conduct which forms the basis of the indictment; the
defense is inconsistent with a denial of the conduct.”  See East v. State, 76 S.W.3d 736, 738 (Tex.
App.—Waco 2002, no pet.); see also Young v. State, 991 S.W.2d 835, 838
(Tex. Crim. App. 1999) (concluding that in order to assert defensive issue of
necessity, defendant must admit conduct charged in indictment); Kimbrough v. State, 959 S.W.2d 634, 640
(Tex. App.—Houston [1st Dist.] 1995, pet. ref’d) (holding “[s]elf-defense is a
justification for one’s actions and necessarily requires an admission of the
conduct at issue”).  While the defendant
need not admit the commission of every statutory element of the offense, he or
she must admit committing the conduct giving rise to the indictment. See Jackson,
110 S.W.3d at 631; Gilmore v. State,
44 S.W.3d 92, 97 (Tex. App.—Beaumont 2001, pet. ref’d). Here, Walker did not
admit to the conduct charged.  Moreover,
the evidence is not sufficient to raise this defensive issue.  We overrule this point of error. 

 

 

V.        THE
TRIAL COURT DID NOT ERR IN DENYING WALKER’S MOTION FOR NEW TRIAL

            

            A.        Alleged
Juror Misconduct

 

            Walker’s motion for new trial
was based on perceived jury misconduct. 
Demetrius Wyatt was a juror on this case—one who allegedly knew Whitt
from prior drug dealings.  At the hearing
on motion for new trial, Kelvin Craig, then incarcerated at the Houston County
jail for assault, possession of firearms, and deadly conduct, testified that he
and Wyatt purchased cocaine from Whitt in January 2008.  He further testified that both Wyatt and
Whitt are members of the Hoover Crip Gang. 

            Craig
recounts a telephone call he made to Tay (last name unknown) from the Houston
County jail at some point during the course of Walker’s trial.  At the time Craig called Tay, she was
speaking with Wyatt on her cell phone; Tay therefore carried on a simultaneous
conversation with both Wyatt and Craig. 
The crucial information relayed to Craig during the course of the
telephone conversation was that the jury was already “saying” that Walker was
guilty.  

            Craig called
Tay a number of times during his stay in the Houston County jail; one of these
telephone conversations took place prior to the conclusion of Walker’s
trial.  On the same day of his
conversation with Tay and Wyatt, Craig told Walker (also then incarcerated in
the Houston County jail) about the telephone conversation.  He told Walker that the jury was already “saying”
he was guilty.  

            Demetrius
Wyatt also testified at the hearing on Walker’s motion for new trial.[24]  Wyatt testified that he has known Craig for a
number of years, but does not “run around” with him.  He denied involvement with the Hoover Crip
Gang.  Wyatt denied knowing Whitt and
denied ever having been to Whitt’s house. 
Wyatt testified that he was never involved in a three-way telephone call
with Craig and Tay.  While Wyatt acknowledged
having heard the name “Tay,” he does not know Tay and has never had a telephone
conversation with her.  Wyatt denied
having contact with anyone regarding his jury service and/or the Walker case prior to and through the conclusion
of trial.  

            The final
witness at the hearing on Walker’s motion for new trial was Mary Jordan, the
Houston County sheriff’s administrative assistant and peace officer.  Jordan testified that all telephone calls
placed from cells in the Houston County jail are recorded unless there is a
technical problem.  Jordan was requested
by an investigator appointed to Walker to review the recorded telephone calls
from the Houston County jail for any such calls placed by Craig.  In compliance with this request, Jordan
listened to the recording of each telephone call for the requested time period
to determine if Craig was the caller. 
Jordan placed all such calls on a CD and delivered the CD to the
defense.[25]  Because it is frequently difficult to
determine the caller’s name, Jordan included every call in which she could not
identify the caller.  No recorded call
from Craig to Tay was offered into evidence at the hearing on Walker’s motion
for new trial.  

            B.        Analysis

 

            Article 36.22 of the Texas Code
of Criminal Procedure provides that “[n]o person shall be permitted to converse
with a juror about the case on trial except in the presence and by the
permission of the court.”  Tex. Code Crim. Proc. Ann. art. 36.22
(Vernon 2006).  When a juror converses
with an unauthorized person about the case, harm to the accused is
presumed.  Hughes v. State, 24 S.W.3d 833, 842 (Tex. Crim. App. 2000); Quinn v. State, 958 S.W.2d 395, 401
(Tex. Crim. App. 1997).  

            A trial
court’s ruling denying a defendant’s motion for new trial is reviewed under an
abuse of discretion standard.  Salazar v. State, 38 S.W.3d 141, 148
(Tex. Crim. App. 2001).  We do not
substitute our judgment for that of the trial court; rather, we are to
determine whether the trial court’s analysis was arbitrary or unreasonable.  Ford
v. State, 129 S.W.3d 541, 547 (Tex. App.—Dallas 2003, pet. ref’d).  Additionally, the trial court is the trier of
fact and the sole judge of the credibility of the witnesses at a hearing on
motion for new trial.  Lewis v. State, 911 S.W.2d 1, 7 (Tex.
Crim. App. 1995); Escobedo v. State,
6 S.W.3d 1, 8 (Tex. App.—San Antonio 1999, pet. ref’d).  When the basis of a motion for new trial is
jury misconduct, and evidence at the hearing is conflicting, there is no abuse
of discretion if the trial court overrules the motion for new trial.  Tollett
v. State, 799 S.W.2d 256, 259 (Tex. Crim. App. 1990).

            In the
present case, the testimony conflicted as to whether any improper
communications occurred, and at the conclusion of the hearing, the trial court
determined that the motion for new trial should be denied.  Where, as here, there is conflicting evidence
as to the existence of improper communications, there is no abuse of discretion
when the motion for new trial is overruled. 
Id.  We overrule this point of error.

VI.       MODIFICATION OF JUDGMENT

 

            While neither party has
requested that the judgment be modified, we nevertheless choose to do so.  The judgment of conviction by jury indicates
that the statute for the indictable offense is Section 30.03 of the Texas Penal
Code.[26]
 This is incorrect.  The offense listed in the indictment and the
offense for which Walker was tried and convicted is that of burglary of a
habitation.  The correct statute for this
offense is Section 30.02 of the Texas Penal Code.  Tex.
Penal Code Ann. § 30.02.

            This Court
is authorized to reform the trial court’s judgment so that it may speak the
truth.   French v. State, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); Smith v. State, 223 S.W.3d 690, 696–97
(Tex. App.—Texarkana 2007, no pet.). 
Accordingly, we modify the judgment of the trial court to reflect
conviction pursuant to Section 30.02 of the Texas Penal Code.  

 

 

 

 

 

 

 

 

            As
modified, we affirm the judgment of the trial court.

 

                        

 

 

                                                                                    Jack
Carter

                                                                                    Justice

 

Date Submitted:          May
14, 2010

Date Decided:             May
27, 2010

 

Do Not Publish











[1]See Tex.
Penal Code Ann. § 30.02 (Vernon 2003). 
The punishment range for this first degree felony was enhanced due to a
prior felony conviction.

 





[2]This
case was transferred to this Court from the Tyler Court of Appeals as part of
the Texas Supreme Court’s docket equalization program.  We are not aware of any conflict between the
precedent of the Tyler Court and the precedent of this Court on any issue
relevant in this appeal.  See Tex.
R. App. P. 41.3. 

 





[3]Walker
made three visits to the Whitt home shortly before the shooting. Walker visited
the Whitt home around midnight on November 21, 2008, and returned at
approximately 2:00 a.m.  Walker returned
again at approximately 4:00 a.m.  There
were no arguments between Whitt and Walker, and there was no reason to believe
there was a problem.  Latechia Whitt, the
wife of Whitt, was expected at work early in the morning, and was displeased
with the frequent visits during the night.  
When Walker’s 4:00 a.m. visit awakened Latechia, she arose and readied
herself for work, leaving at approximately 5:30 a.m.  Prior to leaving for work that morning,
Latechia did not notice any antagonism between Whitt and Walker, but did notice
that something was strange. 

 





[4]Even
though Walker fired the gun twice, Whitt was struck only once.  

 





[5]Because
Whitt was dressed in his underclothes, the two were talking through the
partially opened door.  

 





[6]Walker
inflicted knife injuries to Whitt’s neck, arm, and right shoulder.  

 





[7]Whitt
testified that Latechia left twenty-five or thirty dollars lying on the table,
which disappeared.  Although he did not
see Walker take anything from his home, Whitt believes Walker took this money.  

 





[8]Whitt
has a prior conviction for possession of a stolen firearm, and does not own a
gun.  He is currently on parole for
burglary of a habitation.  As a result of
these convictions, Whitt is not permitted to possess firearms.  

 





[9]“Bobby”
is identified in other evidence as Bobby Betsill.  

 





[10]The
camera system, according to Whitt, was installed because items in his yard were
being stolen.  

 





[11]Walker
left his car in Whitt’s driveway, but failed to explain why he left it
there.  On November 21, Whitt loaned Walker twenty dollars, and Whitt expected
to be repaid.  Whitt maintained that the
car and car keys were not security for repayment of this loan.  As far as Whitt knew, the car was
still in the driveway when Walker returned at 6:00 a.m. 

 





[12]Tubbs has known Whitt all of his life and is
Whitt’s cousin and neighbor.  





[13]Two
shots were fired and two shell casings were located.  One bullet was located at the base of Whitt’s
spine.  The second bullet was never
located. 

 





[14]Betsill has several felony convictions and
has served time in prison on four occasions.  At the time of trial, Betsill had recently
been released from a drug rehabilitation center.  

                





[15]At
the time of trial, Kennedy was incarcerated in the Harris County jail for
intent to deliver a controlled substance.  


 





[16]Kennedy
explained that she did not want to get
involved and was using crack cocaine at the time.  She denied ever having purchased drugs from
Whitt. 

 





[17]Tex. Penal Code Ann. § 30.02(a)(1) (“A person commits an offense if, without the
effective consent of the owner, the person . . . enters a habitation . . . with
intent to commit a felony, theft, or an assault.”).

 





[18]A
person commits the offense of aggravated assault if the person intentionally,
knowingly, or recklessly causes serious bodily injury to another or causes
bodily injury to another and the person uses or exhibits a deadly weapon during
the commission of the assault.  See Tex.
Penal Code Ann. § 22.02 (Vernon Supp. 2009).





 

[19]Tex. Penal Code Ann. § 30.02(a)(3).

 





[20]Whitt denied gun ownership.  

 





[21]Kennedy
testified that she had stolen the gun weeks before the shooting, but Pierson
testified the gun was stolen on November 21.

 





[22]Betsill
testified that Kennedy was outside the Whitt home when he arrived that morning,
and Kennedy testified that she was not there. 
Betsill contradicted his own testimony when he initially stated that he
saw Kennedy when he arrived at Whitt’s home and later testified that he did not
see her until he left the house.  





[23]Walker
claims his decision not to testify was a prohibitive factor in permitting the
inclusion of a self-defense issue, and thus, it emasculates his privilege
against self-incrimination under the Fifth Amendment to the United States
Constitution.  However, Walker does not
raise this issue as a point on appeal and we therefore do not address it.





[24]Wyatt
was juror number six in the Walker trial.





 

[25]Inmates
in the Houston County jail cannot receive telephone calls, but they are
permitted to place calls if they have a calling card or if the calls are made
on a collect basis.  In both instances,
the caller is required to identify himself or herself.





[26]This
section of the statute pertains to burglary of coin-operated or coin-collection
machines.  Tex. Penal Code Ann. § 30.03 (Vernon 2003).